THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GEORGE SMITH, Defendant-Appellant.

First District (1st Division)   No. 1—88—0869

Opinion filed December 28, 1992.—Rehearing denied March 10, 1993.

Ambrose & Cushing, P.C., of Chicago (John C. Ambrose, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Noreen M. Daly, Special Assistant State's Attorney, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court.

Following a jury trial, defendant, George Smith, was convicted of involuntary manslaughter (Ill. Rev. Stat. 1989, ch. 38, par. 9—3) in the shooting of his wife, Carolyn Smith, and sentenced to one year of periodic imprisonment and 30 months' probation with one year of supervision. On appeal, we reversed the conviction on the basis that the State did not prove defendant guilty of involuntary manslaughter beyond a reasonable doubt; one judge dissented. (*People v. Smith* (1990), 208 Ill. App. 3d 538, 567 N.E.2d 489.) The supreme court granted the State's petition for leave to appeal and reversed our decision. (*People v. Smith* (1992), 149 Ill. 2d 558.) On remand from the supreme court, we are directed to consider three other issues raised by defendant

which we had not previously addressed. These issues are: (1) whether defendant was denied his constitutional right to a fair trial because the State's opening statement distorted the evidence and prejudiced the jury; (2) whether the trial court erred in allowing a police officer to testify to a prior consistent statement;[1] and (3) whether the trial court erred in denying defendant's motion to suppress evidence of the gun found at the scene. We affirm.

The detailed facts of this case have been amply reported in both our earlier decision and in the supreme court opinion, and are restated here to the extent necessary to consider and resolve the instant appeal. The record reveals that on the night of the shooting, defendant had been drinking with his wife, Carolyn, and some friends at a bowling alley. At about 11 p.m. defendant and Carolyn went home and began to pack their things, including some guns, for an upcoming move to a new home. Defendant testified that he took Carolyn's .38-caliber handgun out of her dresser and brought it into the living room for her to unload. Defendant did not notice whether the gun was in a cocked position or not, but testified that Carolyn had left it cocked in the past because she had trouble shooting it otherwise. Defendant stated that Carolyn had trouble unloading the revolver, so he offered to unload it for her. Carolyn was sitting in a chair and he knelt down beside her. While he was trying to release the latch to remove the shells, the gun "just went off." Defendant denied having his finger on the trigger.

A neighbor testified that he heard a gunshot at 12:14 a.m. on the morning of the shooting. Paramedics testified that defendant reported the shooting at 12:31 a.m., and that defendant's speech was slurred at that time. While the paramedics were working on Carolyn, defendant was very excited and twice attempted to stop them from inserting a tube into her mouth, by grabbing the tube away from them. When the police arrived, they had to handcuff defendant because he appeared to be out of control.

Officer Schwab testified that when they asked defendant where the gun was, defendant told them he had thrown it under the couch because he was afraid of it. Defendant kept repeating that it was an accident. Officer Schwab stated that he smelled alcohol on defendant's breath and noticed that his speech was loud and slurred. In Officer Schwab's opinion, defendant was intoxicated. On cross-examination,

---

[1]The issue was framed in this manner in the parties' briefs; however, the word "inconsistent" was mistakenly used in both our prior opinion and in the supreme court opinion.

Officer Schwab admitted that he had not indicated in his report that defendant had been intoxicated, and in contradiction to his testimony on direct, stated that he was not certain whether defendant had been intoxicated.

Detective Frank Bozzi testified that he interviewed defendant at the police station on October 10, 1986, at 12:40 a.m. and again at 4:40 a.m. Defendant told Detective Bozzi that he had had approximately eight drinks at the bowling alley that night and explained that the gun had accidentally discharged. Detective Bozzi went to defendant's apartment and observed the chair in which Carolyn had been sitting, noticed a hole in the headrest area, and retrieved a bullet.

Defendant first contends that the State's opening statement so distorted the events that it sounded like he had been charged with murder rather than with involuntary manslaughter and prejudiced the jury against him. The State asserts that the alleged errors are waived by defendant's failure to object at trial to the errors or to mention them in his written motion for a new trial. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

■ In any event, the scope and latitude of the prosecutor's opening statement is within the trial court's discretion. (*People v. Rader* (1988), 178 Ill. App. 3d 453, 532 N.E.2d 1365.) An opening statement in a criminal trial should outline the facts which the prosecutor in good faith expects to prove, and reversible error occurs only where the impropriety is attributable to the deliberate misconduct of the prosecutor and results in substantial prejudice to the defendant. *People v. Graca* (1991), 220 Ill. App. 3d 214, 220, 580 N.E.2d 1328.

■ Defendant alleges that the prosecutor misstated the evidence several times during the opening statement. Defendant first cites the following portion of the opening statement as being unsupported by the testimony at trial:

> "The testimony will show you that *** the Defendant wanted to go out *** that his wife told him she didn't want to go out. After that, the Defendant went in the bedroom of their home and came out with a .38 caliber revolver *** he came back out to his wife. *** At that time, the Defendant had the weapon pointed right at his wife's face, was handling the gun, fired the gun striking the victim in the right side of the face."

Defendant contends that this statement misstated the testimony of Detective Bozzi, who testified as to defendant's post-arrest statement detailing what had happened. A review of the record, however, indicates that the statement accurately reflects the testimony of defendant as to what happened and was not a distortion of the events.

Defendant also objects to the following statement regarding his actions while the paramedics treated Carolyn as unsupported by the record:

> "The Defendant in fact was pulling an intubator out of her mouth *** he in fact pulled that intubator out of the victim's mouth."

This statement is supported by the testimony of the paramedics at trial, which indicates that defendant, in fact, tried to prevent the paramedics from inserting a tube into Carolyn's mouth twice by grabbing the tube away from them.

Finally, defendant cites the following statement as a distortion of the facts:

> "He was playing with the gun, and the gun is pointed right at her face."

It is a fundamental principle of trial practice that statements based upon facts in evidence or upon reasonable inferences drawn therefrom are within the scope of proper argument. (*Graca*, 220 Ill. App. 3d at 220, citing *People v. Beier* (1963), 29 Ill. 2d 511, 194 N.E.2d 280.) Defendant's own testimony reveals that he was handling the gun and that Carolyn was shot in the face. Although this remark may have been improper, we find that this statement did not result in "substantial prejudice" to the defendant so as to require a new trial.

Next, defendant contends that the trial court erred in allowing Officer Schwab to testify as to a prior consistent statement he had made in a preliminary hearing. On direct examination, Officer Schwab stated that, in his opinion, defendant had been intoxicated on the night of the shooting. However, during cross-examination, he testified that he did not know whether defendant had been intoxicated or not. Then, on redirect, Officer Schwab testified that at the preliminary hearing, he had stated that defendant had been intoxicated. Defendant argues that the State used Officer Schwab's consistent statement from the preliminary hearing to improperly bolster the officer's testimony and that the repetition gave the testimony undue emphasis and credibility.

■ As a general rule, a witness may not be rehabilitated by admitting former statements consistent with his trial testimony. However, prior consistent statements are admissible to rebut a charge or an inference either that the witness is motivated to testify falsely or that his testimony is of recent fabrication, and such evidence is admissible to show that he told the same story before the time of the alleged fabrication. (*People v. Williams* (1991), 147 Ill. 2d 173, 227, 588 N.E.2d 983, 1003; *People v. Harris* (1988), 123 Ill. 2d 113, 139, 526

N.E.2d 335.) When such an inference is created through cross-examination, admission of a prior consistent statement is proper. *People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183.

■ In the present case, defense counsel did not expressly charge that Officer Schwab had recently fabricated his testimony as to whether defendant had been intoxicated. However, defense counsel's query during cross-examination implied a recent fabrication in that Officer Schwab had changed his original uncertainty to a determination of intoxication after he spoke with an assistant State's Attorney. Accordingly, the exception to the general rule is applicable here. As such, defendant's reliance on *People v. Tidwell* (1980), 88 Ill. App. 3d 808, 410 N.E.2d 1163, is misplaced. In that case, no inference was raised that the witness' in-court statement was a recent fabrication or that he had a motive for testifying falsely.

Lastly, defendant contends that the trial court erred in denying his motion to suppress evidence of the gun acquired at the scene of the shooting. Defendant argues that the police officer's warrantless search and seizure of his gun from under the couch violated his fourth amendment right to be free from unreasonable searches and seizures. Defendant further contends that the situation surrounding the seizure did not fit into any of the narrowly defined exceptions to the rule that all warrantless searches and seizures are unreasonable. These exceptions arise when the searches and seizures are made by consent, made incident to the arrest, based on probable cause where exigent circumstances make securing a warrant impractical, involve a vehicle, or are made for administrative purposes to satisfy a special governmental need.

At the hearing on the motion to suppress, Officer Schwab testified that he and Officer Battaglia were the first police officers to arrive at the scene and that they arrived separately. At the time Officer Schwab responded to the call that a shooting had occurred, he did not know that a crime had been committed. At the scene, defendant told him that he had tossed the gun under the couch because he was scared of the gun. Officer Schwab lifted the couch and Officer Battaglia retrieved the gun. Subsequently, Officer Bozzi removed the gun from the apartment.

■ Pursuant to the well-established "emergency doctrine," police authorities do not need a search warrant to enter into and to search premises for the purpose of providing aid to persons or property in need thereof. Further, any evidence of a crime discovered as the result of the entry may be legally seized without a warrant. (*Mincey v. Arizona* (1978), 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408;

*People v. Bondi* (1984), 130 Ill. App. 3d 536, 474 N.E.2d 733.) The basic elements of the emergency doctrine have been summarized as follows:

> "(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance to protect life or property;
>
> (2) The search must not [have been] motivated by an intent to arrest and seize evidence;
>
> (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." *Bondi*, 130 Ill. App. 3d at 539.

■ In the present case, all of the above elements have been satisfied. The police responded to an ambulance call stating that someone had been shot in defendant's residence. When they asked defendant where the gun was, they did not know whether or not the gunshot wound had been self-inflicted. Further, the fact that Carolyn was lying on the floor, bleeding profusely, provided a reasonable basis for the police to believe that there was an emergency on the premises. Accordingly, the police officers' warrantless search and seizure of the gun was permissible under the emergency doctrine and the trial court properly denied defendant's motion to suppress.

■ Defendant further argues that he was prejudiced by the trial court's erroneous placement of the burden of proof on him to show that the police officers had made an unreasonable intrusion onto the premises. Defendant predicates this claim on the court's statement that, "There is no evidence in this case that the officers made any unreasonable intrusion upon the premises of the defendant or the deceased." Prior to making this statement, the court restated the evidence presented by the State surrounding the circumstances of the search and seizure of the gun, thereby indicating the lack of evidence as to the unreasonableness of the search. We find, therefore, that the court's statement properly summarized the evidence and did not operate to improperly shift the burden of proof to defendant.

In accordance with the mandate of the supreme court, we vacate our order reversing this cause and affirm the judgment of the trial court.

Affirmed.

BUCKLEY, P.J., and MANNING, J., concur.