THE PEOPLE *ex rel.* MICHAEL J. WALLER, Plaintiff-Appellee, v. SEE-BURG SLOT MACHINES *et al.*, Defendants-Appellants.

Second District   No. 2—93—1268

Opinion filed October 26, 1994.—Rehearing denied November 21, 1994.

Ivan H. Tepper, of Waukegan, for appellants.

Michael J. Waller, State's Attorney, of Waukegan, and Joan M. Kripke, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

The State filed a complaint pursuant to section 28—5 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 28—5 (now 720 ILCS 5/28—5 (West 1992))) for the forfeiture of 94 slot machines owned by the defendant, Peter Vole, Jr., which were found after a police search of his office building. The defendant filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)), arguing that the complaint was not timely filed and that his slot machines were exempt from forfeiture. He also filed a motion to suppress all physical evidence discovered as a result of the search of his building. The court denied the motions, and it subsequently ordered the forfeiture of the slot machines. On appeal, the defendant contends that the trial court erred by: (1) denying his motions to dismiss the complaint and suppress evidence; and (2) ordering the forfeiture of the slot machines. We affirm.

The Waukegan police department seized the defendant's slot machines on March 2, 1991, and the State filed its forfeiture complaint pursuant to section 28—5 of the Code on September 18, 1992. Section 28—5 provides in relevant part:

"Every device used for gambling which is incapable of lawful use or every device used unlawfully for gambling shall be considered a 'gambling device', and shall be subject to seizure, confiscation and destruction by the Department of State Police or by any municipal, or other authority, within whose jurisdiction the same may be found. As used in this Section, a 'gambling device' includes any slot machine ***." Ill. Rev. Stat. 1991, ch. 38, par. 28—5 (now 720 ILCS 5/28—5 (West 1992)).

The defendant moved to dismiss the complaint, arguing that the slot machines were exempt from forfeiture because: (1) he did not know of any unlawful use of the machines (see Ill. Rev. Stat. 1991, ch. 38, par. 28—5(a) (now 720 ILCS 5/28—5(a) (West 1992)) ("With the exception of any device designed for gambling which is incapable of lawful use, no gambling device shall be forfeited or destroyed unless an individual with a property interest in said device knows of the unlawful use of the device")); and (2) he remanufactured the machines for transport in interstate or foreign commerce (see Ill. Rev. Stat. 1991, ch. 38, par. 28—1(b)(4) (now 720 ILCS 5/28—1(b)(4) (West 1992)) ("Participants in any of the following activities shall not be convicted of gambling therefor: *** Manufacture of gambling devices, including the acquisition of essential parts therefor and the assembly thereof, for transportation in interstate or foreign commerce to any place outside this State when such transportation is not prohibited by any applicable Federal law")). The defendant also argued that the State's complaint was untimely.

At the hearing on his motion to dismiss the complaint, the defendant testified that the slot machines were manufactured in 1978 by Gaming Devices, Inc., a division of the Seeburg Corporation. The defendant became the owner of the machines when a company he had invested in, Destron, bought Gaming Devices, Inc. The slot machines the defendant acquired were missing various parts, and the defendant testified that his intent was to "remanufacture them and find a new customer in either one of the states that they are legally sold in *** or overseas." To that end, the defendant changed the machines' fuses, bulbs, glasses, coin mechanisms and switches and he then personally tried out the machines to make sure they worked. However, the defendant testified that even with these changes the slot machines are outmoded because they are electromechanical and not computer-chip operated. Therefore, there are no States where the machines can be used. Although the defendant stated that there were potential markets for the machines "on private, individual deals" or in third-world countries, he did not identify any buyers that he had lined up.

The defendant sought to introduce letters purportedly from the Department of Justice which stated that he had registered the slot machines for transportation in interstate and foreign commerce pursuant to 15 U.S.C. § 1173 (1988). That section states in relevant part:

"It shall be unlawful for any person engaged in the business of manufacturing gambling devices, if the activities of such business in any way affect interstate or foreign commerce, to manufacture any gambling device during any calendar year, unless, after November 30 of the preceding calendar year, and before the date on which such device is manufactured, such person has registered with the Attorney General under this subsection, regardless of whether such device ever enters interstate or foreign commerce." (15 U.S.C. § 1173 (1988).)

However, the trial court refused to admit the letters into evidence because: (1) there were no dates on the letters indicating when they had been sent; and (2) the letters did not refer to any particular machines.

Following the defendant's testimony, the trial court inquired whether the parties were going to put on any testimony regarding the statute-of-limitations issue. The parties then stipulated that after the Waukegan police department seized the slot machines on March 2, 1991, the Federal government instituted forfeiture proceedings in the United States District Court for the Northern District of Illinois on May 21, 1991. The cause was transferred to State court on September 3, 1992. The State filed its complaint on September 18,

1992, and the defendant was served with the complaint on September 22, 1992.

The trial court denied the motion to dismiss, ruling that: (1) the complaint was timely filed; (2) the defendant knew the machines were unlawful; and (3) the defendant had not remanufactured the slot machines for transportation in interstate or foreign commerce.

The trial court subsequently held a hearing on the defendant's motion to suppress all physical evidence discovered as a result of the search of his office building. At that hearing, the testimony established that at approximately 8 a.m. on March 2, 1991, Officer Ralph Henriquez of the Waukegan police department observed that an entry-level 8-foot by 8-foot plate glass window in a vacant office building at Washington and Genesee Streets had been broken. The break was large enough to allow entry into the building. Henriquez contacted the dispatcher at the police department, and he then waited in his squad car for several minutes until Officer Louis Rodriguez arrived.

Since there had been a rash of burglaries in other vacant buildings in the area, Officers Henriquez and Rodriguez decided to secure the building at Washington and Genesee even though they did not have a search warrant. They entered the building through the broken window and saw no one on the first floor. They subsequently walked up a staircase to the second floor, where they observed the slot machines in two rooms.

At approximately 8:45 a.m., the officers heard a noise on the first floor and they went downstairs to investigate. There they met Tom Crause, the caretaker of the building, who told them that the defendant was the owner of the building. Henriquez then went to the police station to inform Lieutenant James Sroka of what they had found. Lieutenant Sroka subsequently ordered Officer Steven Jones to seize the machines.

The trial court denied the defendant's motion to suppress, ruling that the large, broken-out window in the commercial building in a downtown area constituted sufficient exigent circumstances for the officers to enter the building without a warrant.

The court subsequently held a hearing on the State's complaint for the forfeiture of the slot machines. At that hearing, the State called Roger Shiels, a master sergeant with the Illinois State Police, to testify about whether the machines comply with the Illinois Gaming Board's requirements for use on riverboat casinos. The defendant objected, contending that the rules of the Illinois Gaming Board were irrelevant because the machines were not manufactured for use on riverboat casinos. The court decided to allow the testimony because it determined that "slot machines generically are illegal in

Illinois, with the exception of riverboat gambling slot machines; that there are certain administrative standards for usage of riverboat gambling slot machines, and that the purpose of the testimony can properly be that the standards for the riverboat gambling slot machines *** simply have not been met by these machines, and thus, further, show their alleged illegality."

Shiels testified that he is assigned to the Illinois Gaming Board and that his job is to review and inspect electronic gaming devices prior to their approval for use on riverboat casinos. After examining the slot machines on March 4, 1991, and May 11, 1993, Shiels determined that the slot machines did *not* comply with the Illinois Gaming Board's requirements for use on riverboat casinos.

In response to a question from defense counsel about the value of the slot machines, Shiels testified that each machine would not be worth more than $500. The defendant subsequently testified that each machine could be valued as high as $3,500. In closing arguments, defense counsel contended that the forfeiture of the slot machines would constitute an excessive fine and therefore be in violation of the eighth amendment.

The court determined that the slot machines were *per se* contraband, and it ordered them forfeited. The court ruled that such a forfeiture did not constitute a violation of the eighth amendment. The court also reiterated its earlier findings that the machines were not remanufactured for transportation in interstate or foreign commerce and that the defendant knew that the machines were illegal.

On appeal, the defendant's first argument is that his motion to dismiss the complaint should have been granted because he remanufactured the slot machines for transport in interstate or foreign commerce and therefore he was exempt from the gambling statute. The defendant relies on section 28—1(b)(4) of the Code:

"Participants in any of the following activities shall not be convicted of gambling therefor:

\* \* \*

Manufacture of gambling devices, including the acquisition of essential parts therefor and the assembly thereof, for transportation in interstate or foreign commerce to any place outside this State when such transportation is not prohibited by any applicable Federal law." (Ill. Rev. Stat. 1991, ch. 38, par. 28—1(b)(4) (now 720 ILCS 5/28—1(b)(4) (West 1992)).)

The defendant also cites *Hershey Manufacturing Co. v. Adamowski* (1961), 22 Ill. 2d 36, in which our supreme court held that slot machines destined for interstate or foreign commerce have the potential for lawful use and are exempt from forfeiture.

However, unlike in *Hershey*, where it was undisputed that the slot machines in question were manufactured exclusively for foreign and interstate commerce (*Hershey*, 22 Ill. 2d at 42), the trial court in the present case determined after listening to the testimony that the defendant's slot machines were *not* manufactured for transportation out of State. The trial judge is in the best position to evaluate the testimony of the witnesses, and we will not disturb his factual findings in a forfeiture proceeding unless they are against the manifest weight of the evidence, that is, unless the opposite conclusion is clearly evident. *People v. 1991 Dodge Ram Charger* (1993), 250 Ill. App. 3d 810, 814.

■ The trial court based its ruling on the defendant's testimony that, since his machines are electromechanical and not computer-chip operated, they are outmoded and not suitable for sale or use in any State. The trial court also noted that, although the defendant testified that there was a potential market for the machines in "private" sales and in third-world countries with limited computer technology, he could not identify any prospective buyers. Further, although the defendant asserts that he presented to the trial court copies of letters which allegedly showed proof of registration with the Department of Justice for transportation of the slot machines in interstate and foreign commerce, the court specifically found those letters to be unreliable. The court noted that there were no dates on the letters and that the letters did not specifically refer to the machines in question. We find that the trial court's ruling that the slot machines were not manufactured for transportation in interstate or foreign commerce is not against the manifest weight of the evidence.

We note that the State also argues that the section 28—1(b)(4) exemption applies only for those persons who *manufacture* gambling devices for transportation in interstate or foreign commerce, but that the defendant's activities (changing the machines' fuses, bulbs, glasses, coin mechanisms and switches) are more aptly characterized as "maintenance" of already existing machines. We need not address that argument since we have already held that the defendant does not fall within the exemption.

The defendant next argues that the State's complaint was untimely because it was brought approximately 18 months after his slot machines were seized. The defendant relies on *People ex rel. Ward v. 1963 Cadillac Coupe* (1967), 38 Ill. 2d 344, in which our supreme court held that the State's $3^1/_2$-month delay in filing forfeiture proceedings against the defendant's Cadillac under article 36 of the Code (Ill. Rev. Stat. 1965, ch. 38, pars. 36—1 through 36—4 (now

720 ILCS 5/38—1 through 38—4 (West 1992))) was untimely. Article 36 of the Code, which provides for the seizure and forfeiture of vessels, vehicles and aircraft used in the commission of certain offenses, states that the State's Attorney shall *"forthwith* bring an action for forfeiture." (Emphasis added.) (Ill. Rev. Stat. 1965, ch. 38, par. 36—2(a) (now 720 ILCS 5/36—2(a) (West 1992)).) Our supreme court determined that the State's $3^{1}/2$-month delay did not comply with "the specific commands of the statute requiring 'prompt' determination of the propriety of remission." (*1963 Cadillac Coupe*, 38 Ill. 2d at 348.) In the present case, though, the State has brought the forfeiture complaint pursuant to section 28—5 of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 28—5 (now 720 ILCS 5/28—5 (West 1992))), which does not have a specified statute of limitations *nor* any requirement that a forfeiture proceeding be filed "forthwith."

Although we find that *1963 Cadillac Coupe* is not controlling in this case, our analysis of the statute of limitations issue is not finished. In *United States v. $8,850 in United States Currency* (1983), 461 U.S. 555, 76 L. Ed. 2d 143, 103 S. Ct. 2005, the United States Supreme Court held that an undue delay in filing a forfeiture proceeding may violate the claimant's right to due process. The court determined that the four-factor test developed in *Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182, to determine when governmental delay has abridged the right to a speedy trial, provides an appropriate framework for determining whether the delay in filing a forfeiture proceeding violates the due process right to be heard at a meaningful time. The factors to consider are: (1) the length of the delay; (2) the reason for the delay; (3) the claimant's assertion of his or her right; and (4) the prejudice to the claimant. *$8,850*, 461 U.S. at 564, 76 L. Ed. 2d at 152, 103 S. Ct. at 2012.

The Supreme Court noted that the "overarching factor" is the length of the delay, but that "closely related" is the reason the State assigns for the delay. (*$8,850*, 461 U.S. at 565, 76 L. Ed. 2d at 153, 103 S. Ct. at 2012.) In the present case, the reason for the State's 18-month delay in filing its forfeiture complaint is that the slot machines were transferred to the Federal government one or two months after they were seized by the Waukegan police department on March 2, 1991, and forfeiture proceedings were subsequently instituted in Federal court on May 21, 1991. A forfeiture proceeding is *in rem* (*People v. Braden* (1993), 243 Ill. App. 3d 671, 676), and it is well established that "as between a prior Federal and subsequent State court action, both exercising *in rem* jurisdiction, the court which first acquires jurisdiction has exclusive jurisdiction" (*Pfaff v. Chrysler Corp.* (1992), 155 Ill. 2d 35, 73). Thus, in this case the State court did

not have jurisdiction in the forfeiture proceeding until the cause was transferred to it on September 3, 1992. We note that the State filed its forfeiture complaint only two weeks later, on September 18, 1992.

The third factor to be considered in the due process balance is whether the defendant has asserted his right to a timely disposition of the matter. However, the record before us does not indicate what steps, if any, the defendant took in Federal court to speed up the proceedings there or otherwise transfer the cause to State court. Thus, we are unable to determine whether the defendant made any efforts which could have reduced the 18-month delay by the State in filing its complaint. Our analysis of this factor therefore weighs against the defendant, since as the appellant he has the burden of providing a sufficient record to support his claim of error. *In re Petition to Annex Certain Property* (1993), 244 Ill. App. 3d 820, 831.

With regard to the fourth factor, the defendant has not shown any prejudice by the State's delay in filing its forfeiture complaint. The primary inquiry is whether the delay has hampered the defendant in presenting a defense on the merits, for example, through the loss of witnesses or other important evidence. (*$8,850*, 461 U.S. at 569, 76 L. Ed. 2d at 155, 103 S. Ct. at 2014.) In the present case, no witnesses or other evidence was lost as a result of the delay, and the defendant does not contend that his defense has been hampered.

■ We think that the balance of factors indicates that the State's delay in filing its forfeiture complaint was reasonable. The defendant's argument to the contrary appears to be premised on the assumption that the State could have filed its complaint while the forfeiture proceeding was pending in Federal court. However, as discussed above, the Federal court had exclusive jurisdiction until the cause was transferred to State court on September 3. The State diligently instituted forfeiture proceedings two weeks later. Moreover, the defendant has not shown that he asserted his right to a timely disposition of the matter or that the delay prejudiced his ability to defend against the forfeiture. Therefore, we find that the defendant was not denied due process of law.

We next address the defendant's argument that the trial court erred in denying his motion to suppress evidence discovered by Officers Henriquez and Rodriguez as a result of their warrantless search of his office building. Warrantless searches and seizures are *per se* unreasonable under the fourth amendment unless they fall within a specifically established and well-delineated exception. (*People v. Paudel* (1993), 244 Ill. App. 3d 931, 939.) This fourth amendment protection extends to commercial premises in which there is a reasonable expectation of privacy against governmental intrusion. (See

*People v. Janis* (1990), 139 Ill. 2d 300, 309.) The fourth amendment exclusionary rule, which requires the suppression of evidence obtained as a result of an unlawful, warrantless search, applies in a civil forfeiture proceeding. *One 1958 Plymouth Sedan v. Pennsylvania* (1965), 380 U.S. 693, 14 L. Ed. 2d 170, 85 S. Ct. 1246; *United States v. James Daniel Good Real Property* (1993), 510 U.S. 43, 49, 126 L. Ed. 2d 490, 500, 114 S. Ct. 492, 499.

A well-established exception to the fourth amendment prohibition against warrantless searches and seizures exists when it is reasonably necessary for officers to enter and search premises for the purpose of rendering emergency aid to persons or property in need thereof. (See *People v. Smith* (1992), 242 Ill. App. 3d 668, 673; 2 W. LaFave, Search & Seizure § 6.6(b) (2d ed. 1987).) This emergency exception requires:

> "(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property[; and]
>
> (2) The search must not be primarily motivated by intent to arrest and seize evidence[; and]
>
> (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." *Paudel*, 244 Ill. App. 3d at 940.

The exception allows the warrantless entry of a commercial establishment where a law enforcement officer discovers that the commercial premises are unlocked at an hour when one would not expect them to be open for business. (*People v. Gardner* (1984), 121 Ill. App. 3d 464; *People v. Hoffstetter* (1984), 128 Ill. App. 3d 401, 405.) Under the exception, the officer may enter the building to secure the premises as long as there is no reason to believe that the owner would not consent thereto. (*Gardner*, 121 Ill. App. 3d at 471.) However, the officer may not enter the building as part of a preconceived plan to search for criminal activity or the proceeds of a crime. *Gardner*, 121 Ill. App. 3d at 471.

■ We think that the present case presents a logical extension to this exception. Although Officers Henriquez and Rodriguez did not find an open or unlocked door in the defendant's office building, they did discover a break in the entry-level 8-foot by 8-foot glass window which was large enough to allow entry inside. The officers knew the building had been vacant and closed for a number of years, and they were also aware that there had recently been burglaries in other vacant buildings in the area. The officers presented uncontradicted testimony that they entered the building in order to secure the premises and contact the owner. We find from these circumstances that Officers

Henriquez and Rodriguez were justified in entering the building without a warrant.

The defendant contends that the search was illegal because the officers did not hear any screams or cries for help prior to their entering the building, nor did they see any blood or rocks or other foreign objects on the ground. The defendant also notes that there was a conflict in the officers' testimony as to whether they had their guns drawn when they entered the building. The defendant argues that the officers therefore were not faced with an emergency situation and that they entered the building only to satisfy their curiosity and *not* to secure the premises.

However, we have held that the discovery of an unlocked door of a commercial establishment at a time when the building should be closed, *without more*, is sufficient to trigger the emergency exception. (See *Gardner*, 121 Ill. App. 3d 464.) We decline to hold that officers must always have their guns drawn, hear cries for help, or see foreign objects on the ground prior to entering, during nonbusiness hours, a commercial establishment that exhibits signs of entry other than an open or unlocked door.

We wish to stress that our holding here does not necessarily justify a warrantless entry into a commercial establishment in *all* situations where an officer discovers a broken window during non-business hours. The officer must still have reasonable grounds to believe that an emergency is at hand and that there is an immediate need of his assistance for the protection of life or property. Such a situation was present in this case because the break was to an entry-level window large enough to allow access to the establishment, the building was thought to be vacant at the time the window break was discovered, and there had been a rash of burglaries in nearby buildings. Therefore, the trial court did not err in denying the defendant's motion to suppress.

We next address the defendant's argument that the trial court erred by ordering the forfeiture of his slot machines. As we noted earlier, a forfeiture proceeding is *in rem* and is civil in form. (*Braden*, 243 Ill. App. 3d at 676.) The issue in such a proceeding is the contraband nature of the forfeitable property. (*Braden*, 243 Ill. App. 3d at 676.) The State must prove its right to the property by a preponderance of the evidence, and the trial court's decision will not be overturned unless it is contrary to the manifest weight of the evidence. *Braden*, 243 Ill. App. 3d at 676.

There are two categories of contraband. Contraband *per se* consists of items whose possession alone constitutes a criminal offense because the thing itself is repugnant to the State. (*Braden*, 243 Ill.

App. 3d at 679.) Derivative contraband consists of articles not inherently illegal but which are used in an unlawful manner. *Braden*, 243 Ill. App. 3d at 679.

Our legislature has designated slot machines to be contraband *per se* (see Ill. Rev. Stat. 1991, ch. 38, par. 28—5 (now 720 ILCS 5/28—5 (West 1992))) unless they fall within one of the following three exceptions: (1) the machines have been manufactured for transportation in interstate or foreign commerce (see Ill. Rev. Stat. 1991, ch. 38, par. 28—1(b)(4) (now 720 ILCS 5/28—1(b)(4) (West 1992))); (2) the machines were manufactured 25 years ago or earlier and are therefore considered antiques (see Ill. Rev. Stat. 1991, ch. 38, par. 28—1(b)(7) (now 720 ILCS 5/28—1(b)(7) (West 1992))); (3) the machines are for use on riverboat casinos (see Ill. Rev. Stat. 1991, ch. 38, pars. 28—5(e), (f) (now 720 ILCS 5/28—5(e), (f) (West 1992))).

■ The trial court determined that none of the exceptions applied to the defendant's slot machines and therefore they were contraband *per se*. We find that the trial court's ruling was not against the manifest weight of the evidence. As discussed earlier in this opinion, the testimony established that the slot machines were not manufactured for transport in interstate or foreign commerce. The defendant also admitted that the machines were manufactured in 1978, and therefore they are not antiques. Finally, Master Sergeant Roger Shiels gave uncontradicted testimony that the machines do not comply with the Illinois Gaming Board's requirements for use on riverboat casinos.

■ The defendant argues that we should reverse the trial court's determination because it allowed Shiels to give "irrelevant" testimony that the defendant's slot machines are not suitable for use on riverboat casinos. We do not follow the defendant's logic. As discussed above, slot machines *can* be legally manufactured for use on riverboat casinos. By allowing Shiels' testimony, the trial court determined that the defendant's slot machines did not fall within this limited exception to the general prohibition against the possession of slot machines. Thus, the trial court committed no error in admitting this testimony.

The defendant next contends that forfeiture is improper since he has no knowledge that anyone ever used the machines. In support of this argument, he cites section 28—5 of the Code, which states in relevant part:

> "With the exception of any device designed for gambling which is incapable of lawful use, no gambling device shall be forfeited or destroyed unless an individual with a property interest in said device knows of the unlawful use of the device." Ill. Rev. Stat. 1991, ch. 38, par. 28—5(a) (now 720 ILCS 5/28—5(a) (West 1992)).

■ However, the defendant's lack of knowledge of any unlawful use of the machines is a defense to their forfeiture only if the machines are capable of lawful use (*i.e.*, are derivative contraband). As we discussed above, the defendant's slot machines are contraband *per se* and are therefore illegal and subject to forfeiture *regardless* of whether they were ever used for gambling.

■ The defendant's final argument is that the forfeiture of his slot machines violates the eighth amendment's prohibition against excessive fines. We reject this argument. Since the slot machines are contraband *per se* and, thus, inherently illegal, the defendant has *no* right to them and he cannot argue that their forfeiture constitutes an excessive fine or is otherwise cruel and unusual.

*Austin v. United States* (1993), 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801, cited by the defendant in support of his argument, is inapposite. In *Austin*, the Supreme Court held that *in rem* forfeitures constitute punishments subject to the limitations of the eighth amendment's excessive fines clause. However, the United States was seeking the forfeiture of *derivative* contraband (a mobile home and auto body shop used in a drug sale), whose possession alone does not constitute a criminal offense.

For the foregoing reasons, we affirm the trial court.

Affirmed.

COLWELL and PECCARELLI, JJ., concur.