THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CARLYLE BRADEN, Defendant-Appellant.

Second District   No. 2—91—1138

Opinion filed April 2, 1993.

672

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Joseph Michael Williams, of St. Charles, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and Raymond L. Beck, of Chicago (William L. Browers, Lisa A. Hoffman and John X. Breslin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:
Defendant, Carlyle Braden, appeals from the order of the circuit court of Lake County ordering the forfeiture and transfer of certain weapons pursuant to section 24—6 of the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1989, ch. 38, par. 24—6). This forfeiture statute provides for the confiscation and disposition of weapons upon conviction of an offense in which a weapon was used or possessed by the offender.
We reverse and remand with directions.
Pursuant to a negotiated plea and in exchange for a sentence of nine years' imprisonment, on December 14, 1990, defendant pleaded guilty to the unlawful delivery of a controlled substance (cocaine) (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)), count II of a three-count indictment. The other two counts were nol-prossed: unlawful

delivery of a controlled substance (count I) (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)(2)) and unlawful possession of a firearm without a firearm owner's identification (FOID) card premised on defendant's possession of a single shotgun (count III) (Ill. Rev. Stat. 1989, ch. 38, par. 83—2).

The record shows that, on or about June 1, 1990, Martin Zamudio, who was working in an undercover capacity with the Illinois State Police, went to the home of defendant in Lake Villa, Lake County, Illinois, and purchased what was later determined to be seven grams of cocaine. Also on or about June 1, 1990, while executing a search warrant at defendant's house, the State Police discovered and seized five rifles and two shotguns which defendant alleges are part of his family's collection of heirlooms.

On December 14, 1990, after defendant was admonished and after the factual basis for the plea was heard, defendant's guilty plea on the drug charge was accepted, and judgment was entered thereon. Defendant waived the presentence investigation, and the circuit court of Lake County sentenced him to nine years' imprisonment; the sentence was to run concurrently with a sentence imposed in a McHenry County case.

On July 30, 1991, the State filed a notice and an attached order for the transfer to the McCollum Lake police department of five rifles and two shotguns described in the order and then in the possession of the Illinois State Police. The State's notice, dated July 18, 1991, stated that it would appear on July 30, 1991, to file the order for the transfer of weapons and to set a date certain for a hearing. The notice was addressed to Randy Franklin in Chicago, Illinois, who was defendant's attorney of record during the prior criminal proceedings several months earlier. The notice contains a statement that it was sent on July 18, 1991, but there is no proof of service or mailing.

On July 30, 1991, in what appears to be an *ex parte* proceeding, the trial court entered the transfer order with a notation that the order be stayed for a period of 30 days. The minute entry for that date states that the assistant State's Attorney was present and the State was given leave to file the order for the transfer of weapons and the order was entered. The entry notes that the defendant remained in the custody of the Department of Corrections. There is no report of proceedings listed for that date.

Defendant *pro se* mailed from Lincoln Correctional Center a motion to vacate the transfer order; the motion was filed on August 26, 1991. In his motion, he claimed the transfer order was wrong-

fully entered on July 30, and he requested that the weapons be returned to him or his agent upon production of proof of ownership and a proper identification (FOID) card. The motion was supported by an affidavit in which defendant stated, among other things, that he had not seen the proposed order prior to its entry; that the assistant State's Attorney stated that the order was pursuant to section 24—6 of the Code; that defendant was convicted of a drug offense and that the weapons were removed from his house at a later date and not in his presence and the weapons were not involved in the commission of the crime; that, at sentencing, the assistant State's Attorney stated that the weapons would be returned and had subsequently changed his position; that the weapons were owned by defendant and his family, had been passed from generation to generation, and had sentimental value; and that defendant could not afford legal counsel.

Defendant also appended a portion of a December 13, 1990, transcript in the McHenry County proceeding, in which defense counsel moved for the return of some weapons to defendant's ex-wife. The assistant State's Attorney stated that the weapons would be returned if someone could establish ownership and present a FOID card. The minute entry for August 27, 1991, shows that the cause was continued to August 30 for the State to file a response to defendant's motion and to set a hearing date; defendant remained in the custody of the Department of Corrections.

On August 30, 1991, the Lake County State's Attorney filed the State's response to defendant's objection to the entry of the order of transfer of the weapons. The response averred that, on or about June 1, 1990, there was a search of the defendant's premises in Lake Villa, Lake County, where the weapons were seized; that defendant was not in possession of a FOID card; that pursuant to section 24—6 the court had the discretion to transfer the weapons to the McCollum Lake police department; that the McHenry County State's Attorney's office erroneously agreed to return the weapons to defendant as part of a plea negotiation in an unrelated McHenry County criminal case; that there was no agreement between the prosecuting agencies of Lake and McHenry Counties authorizing this condition of the McHenry County negotiation; and the State prayed for an order of transfer of the weapons.

Appended as an exhibit to the State's response was the transcript of a Lake County grand jury proceeding of October 24, 1990, in which Martin Zamudio of the Illinois State Police testified concerning the drug transaction. Based on what appears to be hearsay,

Zamudio stated that he himself did not discover the weapons, but, pursuant to a search warrant, another team discovered some weapons at defendant's house and Zamudio ascertained that defendant did not have a FOID card "present to go with those weapons." There was little foundation for the statement.

At the Lake County proceeding on August 30, 1991, the State noted that defendant was not present but was in the custody of the Department of Corrections and that the matter came on for status regarding defendant's motion; the State sought leave to file its response. In response, the court made the following ruling:

> "The Court will rule that it appears from the evidence before it that pursuant to 24—6(a) that the weapon was present at the time of the possession of the drugs and as such the weapon seized can be confiscated. Consequently, I will deny the respondent's motion, Mr. Braden."

The assistant State's Attorney then asked if the order transferring "the weapon" was entered. The court responded that the order had been entered and was stayed 30 days; the order was no longer stayed and transfer could take place.

From Lincoln, Illinois, on October 1, 1991, defendant *pro se* mailed a late notice of appeal from the forfeiture order. The notice was filed on October 4, and the trial court appointed the State Appellate Defender as counsel on appeal on October 7. Appellate counsel moved to file a late notice of appeal (134 Ill. 2d R. 606(c)), in part on the ground that defendant was denied due process of law as a result of the trial court's failure to conduct an evidentiary hearing regarding the disputed confiscation of the weapons. This court allowed defendant's motion to file his late notice of appeal on January 6, 1992.

On appeal, defendant first argues that the trial court erred in denying his motion to vacate and in ruling on August 30, 1991, that the weapons should be forfeited as the court's ruling was legally incorrect with respect to section 24—6 of the Criminal Code. Alternatively, defendant argues that the court's order was against the manifest weight of the evidence and was entered *ex parte* in the absence of the defendant and without the benefit of an evidentiary hearing. Otherwise stated, the thrust of defendant's arguments is that: (1) the proceeding was legally insufficient, and (2) the evidence was insufficient to support an order of forfeiture on the basis that the weapons were either contraband *per se* or derivative contraband arising from the use or possession of a weapon during the commission of a crime.

The State replies that the order is supported by the record, but candidly argues, alternatively, that, if the evidence is deemed unsatisfactory, the State should be allowed to prove its case on remand. The State acknowledges that the matter was up for "status" and that, before it could present its case, the judge "somehow determined that the weapons were subject to forfeiture as derivative contraband." To its credit, the State appears to concede that there were deficiencies in the proceedings below. We first consider the legal sufficiency of the proceedings below.

Section 24—6 of the Criminal Code provides in pertinent part:

"(a) Upon conviction of an offense in which a weapon was used or possessed by the offender, any weapon seized shall be confiscated by the trial court.

(b) *** After the disposition of a criminal case and when a confiscated weapon is no longer needed for evidentiary purposes, and when in due course no legitimate claim has been made for such weapon, the court may transfer such weapon to the sheriff of the county who shall proceed to destroy it, or may in its discretion order such weapon preserved as property of the governmental body whose police agency seized the weapon ***." Ill. Rev. Stat. 1989, ch. 38, pars. 24—6(a), (b).

A forfeiture proceeding, such as one pursuant to section 24—6 of the Criminal Code, is *in rem* (*People v. Ziomek* (1989), 179 Ill. App. 3d 303, 306) and is technically civil in form, but it may also be described as quasi-criminal where its objective is to penalize unlawful activity. (*People v. Earl* (1984), 121 Ill. App. 3d 254, 257, citing *People v. Mudd* (1977), 54 Ill. App. 3d 603, 606.) The issue in such a proceeding is the contraband nature of the forfeitable property. (See *In re Twenty-Seven Thousand Four Hundred Forty Dollars* (1987), 164 Ill. App. 3d 44, 46.) The State must prove its right to the contraband property by the civil standard of a preponderance of the evidence, and on review the trial court's decision will be overturned if it is contrary to the manifest weight of the evidence. (*People v. LeShoure* (1986), 143 Ill. App. 3d 839, 844.) Forfeitures of property are not favored in the law, and statutes authorizing forfeitures must be strictly construed. (*Earl*, 121 Ill. App. 3d at 257.) Whether property is contraband and subject to confiscation depends on the nature of its use at the time of seizure. *People v. Moore* (1951), 410 Ill. 241, 252.

The United States and the Illinois Constitutions preclude the government from asserting summary authority over the property of

any persons, and any deprivation of property must be in accordance with due process of law. (See *People v. Hermann* (1986), 150 Ill. App. 3d 224, 229-30.) As a minimum, procedural due process requires notice, an opportunity to respond and a meaningful opportunity to be heard. *Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 42; see *G.M. Sloan Mosaic & Tile Co. v. Newman/Lustig & Associates* (1990), 199 Ill. App. 3d 518, 522 (trial court could not *sua sponte* impose sanctions where party was not accorded procedural due process and had no meaningful opportunity to defend); *Heimberger v. Village of Chebanse* (1984), 124 Ill. App. 3d 310, 316 (due process requires notice and opportunity for hearing appropriate to nature of the case *prior* to deprivation unless extraordinary circumstances require immediate action to protect valid governmental interests).

■ In an *in rem* forfeiture proceeding, a fundamental due process requirement is that notice be given which is reasonably calculated, under all the circumstances, to apprise the interested parties, including prisoners, of the pendency of the action and to afford them an opportunity to present their objections. (*Robinson v. Hanrahan* (1972), 409 U.S. 38, 34 L. Ed. 2d 47, 93 S. Ct. 30, *rev'g People ex rel. Hanrahan v. One 1965 Oldsmobile* (1972), 52 Ill. 2d 37; see also *LeShoure*, 143 Ill. App. 3d at 843-44, 848 (forfeiture proceeding implicates minimum due process requirements).) Under appropriate circumstances, a judgment in the nature of a default judgment may be deemed plainly infirm as a violation of due process when it is entered where there is no realistic opportunity for a party to appear in court and protect his interest in his property by presenting a meritorious defense. *Williams*, 139 Ill. 2d at 48.

■ In the case at bar, the forfeiture order of July 30, 1991, was entered *ex parte* and apparently without sufficient notice to afford defendant a reasonable opportunity to respond to the State's motion and to contest the proceeding. The record does not show that defendant or the attorney who had represented him some months before ever received actual notice of the proceeding. The State's original notice of motion merely sought to file the proposed order and to obtain a date certain for a hearing. The State presented no factual allegations to support the entry of that order, yet the court entered a forfeiture order apparently without an evidentiary hearing, but stayed the order for 30 days. When defendant somehow learned of the order, he contested the factual and legal bases for its entry both in his motion and in his supporting affidavit.

Nevertheless, on August 30, at a status hearing, instead of permitting the State merely to file its response to defendant's motion and set a hearing date as the court had indicated it would do in its minute order entry of August 27, the court, again in the absence of defendant or his counsel, proceeded to rule on the merits of the cause without even permitting the State to present its case. The court concluded, on the basis of unproved and unchallenged allegations of fact in the record, that the "weapon" (singular) was derivative contraband under section 24–6 of the Code because it was "present" at the time of the drug transaction and could therefore be confiscated. It is clear to us that the court had before it no competent evidence to make this factual finding, and we cannot condone such a summary procedure. See *People v. Steskal* (1973), 55 Ill. 2d 157, 160.

The record is simply too incomplete to show that the weapons were derivative contraband stemming from the commission of a crime merely because defendant pleaded guilty and was convicted of a drug offense. There is no evidence tying the drug offense to the presence of weapons during the drug transaction. The weapon charge was nol-prossed. The search appears to have been executed at a different time after the drug offense, and neither the ownership of the weapons nor the availability of a FOID card has been clearly established. The State was required to prove its claim by a preponderance of the evidence. Additionally, it appears that the State changed the position it adopted in obtaining a negotiated plea and had assured defendant that the weapons would be returned to a family member upon a sufficient showing of ownership and a FOID card. Under these circumstances, the defendant was entitled to an evidentiary hearing on the merits. See *City of Chicago v. Pudlo* (1983), 123 Ill. App. 3d 337, 345.

In the absence of a sufficient notice to defendant and a meaningful opportunity for him to contest the State's action and in view of the court's *sua sponte* ruling made *ex parte* and without sufficient evidence, we deem this proceeding legally deficient as a violation of due process. The court's order of July 30 is constitutionally infirm and must be reversed and the cause remanded for further proceedings which comport with procedural due process. In so doing, we make no determination upon the merits of the case. The State must be required to prove its case by a preponderance of the evidence, and defendant must be afforded an evidentiary hearing in which he may contest the State's claim.

■ We observe that, as far as the State and the defendant are concerned, such a forfeiture proceeding has been treated as a continuation of the prosecution of the criminal case. (*People v. LeShoure*, 143

Ill. App. 3d at 842.) Although defendant argues that he must be personally present at the hearing, he fails to cite sufficient relevant authority for this argument for us to consider it, and we will not issue an advisory opinion on this subject. Under the circumstances, however, where defendant was incarcerated and unrepresented by counsel during the forfeiture proceeding, we believe that, on remand, he should be allowed to raise this issue in the trial court as well as whether he is entitled to the appointment of counsel.

• 4 Because the issue of the nature of the contraband has been raised and fully briefed by both parties and because this issue is likely to resurface on remand, we will address this issue. There are two categories of contraband. Contraband *per se* consists of those items whose possession alone constitutes a criminal offense, and such articles need not be returned even if improperly seized. Derivative contraband consists of articles not inherently illegal but used in an unlawful manner. (*People v. Steskal* (1973), 55 Ill. 2d 157, 159.) Designation of an item as contraband *per se* means that the *mere possession of the item alone* constitutes the crime; it denotes an express public policy against the existence of the object, such as a sawed-off shotgun or counterfeit money, because the thing itself is repugnant to the State. (*People v. Mudd* (1977), 54 Ill. App. 3d 603, 604.) Money itself, for example, is not contraband unless it is declared so because of its unlawful use. Unless an article is contraband *per se*, it must have a rational relationship or nexus to an unlawful purpose before it can be subject to forfeiture. *In re Fifty-Three Thousand Two Hundred Sixty Three Dollars* (1987), 159 Ill. App. 3d 114, 118.

Thus, where a defendant commits a crime in which a gun is used or possessed, the gun may be treated as derivative contraband under section 26—4 of the Criminal Code, but the weapon must be sufficiently closely related to the commission of the offense to be deemed derivative contraband subject to confiscation. (*LeShoure*, 143 Ill. App. 3d at 845.) In *LeShoure*, firearms taken from defendant's house after defendant was arrested on drug charges for which he was later convicted were deemed not to be contraband *per se* even though as a convicted felon he could not lawfully possess them. Defendant was allowed to convey his interest in the weapons to someone who could lawfully possess them. (*LeShoure*, 143 Ill. App. 3d at 845; accord *People v. Gant* (1986), 150 Ill. App. 3d 180, 191 (where guns not contraband *per se*, if defendant was not eligible to possess the weapons, they should be turned over to designee of defendant who is eligible to possess them).) The *LeShoure* court relied on *Earl*, which treated

guns as contraband *per se*, derivative contraband, or neither, depending on the circumstances. *Earl*, 121 Ill. App. 3d at 258.

In *Mudd* (54 Ill. App. 3d 603), defendant was arrested and charged with the illegal use of a weapon. A jury acquitted him of the charge. The trial court denied the defendant's motion for the return of his gun, and, although the State stipulated that the gun was not contraband *per se*, the trial court ordered the gun confiscated and destroyed. Relying on *Steskal* (55 Ill. 2d 157), the reviewing court concluded that a gun which is not contraband *per se*, where there is no contest over ownership, can be ordered confiscated and destroyed only after there has been a criminal conviction under the charges pursuant to section 24—6 of the Criminal Code. Because the State did not claim that the gun was contraband *per se*, the trial court's decision was reversed. *Mudd*, 54 Ill. App. 3d at 607; see *In re Fifty-Three Thousand Two Hundred Sixty Three Dollars*, 159 Ill. App. 3d at 119.

Also relying on *Steskal*, the *Mudd* court warned of the potential danger in allowing the forfeitures of property without a conviction where the State could conduct improper searches and seizures with the knowledge that, even though a criminal prosecution would be futile, the forfeiture proceeding would partially accomplish the same effect. *Mudd*, 54 Ill. App. 3d at 606.

In *Earl*, the defendant was charged with the unlawful use of weapons, several traffic offenses, and resisting a peace officer. A jury acquitted him of all charges except the unlawful use of a weapon. The gun on which the offense was premised was an automatic pistol located in the defendant's car on the floor near the driver's seat. When the trunk of the car was later searched, some ammunition and 10 other firearms were discovered and seized. The automatic pistol was found to be clearly within the definition of derivative contraband where defendant used or possessed it in connection with illegal activity. However, it was also determined that the pistol was stolen and was returnable to its owner, who was not convicted of a crime. Additionally, two other firearms seized from the trunk of the car were found to be the property of third persons. The remaining guns were property of the defendant and returnable to him since they were neither contraband *per se* nor derivative contraband because they were not immediately accessible to the defendant at the time of the offense.

The *Earl* court rejected the State's argument that, even though these weapons were not contraband *per se*, the definition of derivative contraband should include every weapon seized from a defendant who is later convicted of any weapon-related offense. Voicing constitutional

concerns, the *Earl* court concluded that the legislature did not intend such a far-reaching result where innocently possessed, noncontraband items would be seized merely because defendant was convicted of a weapon-related offense.

In *People v. Wynn* (1981), 98 Ill. App. 3d 567, defendant produced only an expired FOID card when the police went to his home to investigate a domestic disturbance and defendant's wife showed them his gun. The trial court stated it was not making a finding of guilt and only placed defendant on supervision. When defendant challenged the confiscation of his weapon on appeal, the reviewing court determined that a gun is not contraband *per se* and because defendant was not convicted, the order of confiscation could not stand.

In the present appeal, citing *People v. Ziomek* (1989), 179 Ill. App. 3d 303, the State argues that we should deem defendant's guns contraband *per se* merely because defendant was charged with possessing the weapons (plural) without a FOID card. In *Ziomek*, the reviewing court classified as contraband *per se* weapons unregistered contrary to Chicago city ordinances. After a hearing, the trial court had ordered the weapons (except for an Uzi 9 mm weapon) returned to defendant outside the city limits; the court had granted defendant's motion to quash his arrest and suppress evidence. On appeal the State maintained that, at the time of the seizure, defendant was in violation of the city ordinances and that mere possession by defendant constituted the offense. The reviewing court agreed that the unregistered weapons were contraband *per se* because they resemble other contraband *per se* items such as counterfeit money and illegal narcotics. The court believed that the inherent nature of the unregistered weapons made them contraband *per se*.

■ While we abhor the unlawful use of weapons, we decline to go as far as *Ziomek*, particularly on the facts of this case. First, as can be seen in our review of *LeShoure, Earl, Mudd*, and *Wynn*, the weight of Illinois authority does not treat all guns as contraband *per se* without more. The classification depends on the circumstances. Rather, the guns must have some close connection to illegal activity before they will be deemed contraband, that is, derivative contraband; or the guns must be incapable of lawful ownership thus making them contraband *per se* (such as a sawed-off shotgun). The guns in the present case do not appear to be inherently contraband *per se* because extrinsic proof is necessary to show that they have been used or possessed unlawfully. In *Ziomek*, it appears that there was a hearing in which the necessary facts were considered. The major weakness of the *Ziomek per se* rule becomes evident when we attempt to apply it:

there must be some additional factual showing that the guns were unlawfully possessed other than mere possession alone in order to make the contraband *per se* finding. Unlike a sawed-off shotgun or counterfeit money, which can be determined from their inherent physical characteristics to be contraband *per se* and where the items can never be legally owned by the ordinary citizen, the guns here could have lawfully belonged to defendant or his family if proof of ownership and a valid FOID card had been produced. The State even indicated a willingness to return the weapons upon satisfactory evidence that they could lawfully be possessed.

The lack of a sufficient evidentiary hearing makes it impossible to determine with any certainty whether the guns were contraband—derivative or otherwise. Additionally, the State never expressly argued below that the guns were contraband *per se*, but merely alleged that no FOID card or proof of ownership had been presented. The possession of a weapon coupled with the lack of a valid FOID card may constitute a crime, but the State has not proved such facts, and defendant was never convicted of such a crime. If the crime is the drug transaction, the guns may be deemed derivative contraband if the requisite sufficient nexus between the presence of the weapons and the crime can be established. The State should not be allowed to make a claim of contraband *per se* for the first time on appeal.

For the foregoing reasons, the forfeiture order of the circuit court of July 30, 1991, and its subsequent order of August 30, 1991, denying defendant's motion are reversed. The cause is remanded for further proceedings consistent with the views expressed herein. If the weapons are not deemed contraband, then, upon the satisfactory presentation of evidence, the court should consider whether the weapons may be transferred to any other person who can lawfully possess them. See *People v. Gant*, 150 Ill. App. 3d at 191; *People v. LeShoure*, 143 Ill. App. 3d at 845.

The order of the circuit court of Lake County is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

WOODWARD and BOWMAN, JJ., concur.