THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. UGO DeLUCA, Defendant-Appellant.

First District (1st Division)   No. 1—97—3857

Opinion filed December 14, 1998.

Michael P. Latz, of North Riverside, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William Toffenetti, and Bryan Hofeld, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:
Defendant, Ugo DeLuca, was charged with four counts of unlawful

sale of a firearm by a liquor licensee, two counts of unlawful use of a weapon, and one count of theft. The trial court held a Supreme Court Rule 402 conference. 134 Ill. 2d R. 402. As a result of that conference, defendant entered a guilty plea and was found guilty of the crimes charged and was sentenced to two years' probation and fined $135. The State and defendant had not reached an agreement regarding disposition of the weapons seized from defendant. After attempts to reach an agreement regarding the weapons failed, the trial court ordered the weapons destroyed. Defendant has appealed, alleging that: (1) he was denied due process because the trial court ordered destruction without a hearing; and (2) the weapons seized were improperly confiscated because they were neither contraband *per se* nor derivative contraband. We affirm.

On June 9, 1994, the Illinois State Police executed search warrants at defendant's home and business. The police seized 138 handguns, rifles and shotguns. The State has supplemented the record with copies of the search warrants and supporting affidavits. However, because the trial court did not rely on the affidavits to support forfeiture, we need not consider them further.

On January 24, 1995, a plea and sentencing hearing was held before Judge Daniel Weber. At the hearing, the parties stipulated that, if called, Sal Ladoce would testify he was employed as a Chicago police officer. From April through June 1994, he was engaged in an undercover investigation of defendant. On six separate occasions between April 19, 1994, and June 8, 1994, he met with defendant at his place of business, Sir Gas-A-Lot Video Mart/Knight's Antiques, in Cook County. Defendant had a license to sell alcohol at that location. During those meetings Officer Ladoce purchased handguns, rifles, ammunition and fireworks. One of the handguns, a 9 millimeter Baretta semi-automatic, was described by defendant as "hot." Officer Ladoce discovered the 9 millimeter Baretta was reported taken from the South Barrington police department, and defendant had not been given permission to possess or sell that weapon.

The parties also stipulated that, if called, Jack Nowicki would testify that he is a forensic scientist with the Illinois State Police and had examined items purchased from defendant. He had disassembled and analyzed six explosive devices commonly called M80s and two sticks of dynamite. He found each device contained over one-quarter ounce of flash powder.

The State then tendered an order for confiscation and destruction of all weapons seized. Defendant argued that a number of the weapons seized were rare, valuable antiques. Judge Weber agreed to "hold" the order and granted defendant leave to prepare a list of weapons that

should be preserved. However, Judge Weber stated "any gun that would be just a regular gun, is not considered antique, I want it destroyed."

Defendant moved to have the guns turned over to a licensed dealer for auction, and on November 15, 1995, Judge Weber denied the motion, stating "the law is clear on that, the statute. I can't give [the guns] to private persons." The matter was continued several times. On May 15, 1997, the matter came before Judge Frank DeBoni, who approved an agreed order to transfer the guns to the American Police Museum for educational purposes.

On August 12, 1997, defendant filed a motion to substitute attorneys and a motion to vacate the May, 15, 1997, order alleging that his attorney had entered it without his consent. Both motions were granted. Judge DeBoni further ruled that, because the May 15, 1997, order had been vacated, there no longer existed any reason to stay destruction of the weapons, and he ordered that the weapons be destroyed based on Judge Weber's January 1995 ruling.

On September 9, 1997, the case was transferred back to Judge Weber, who entered an order for destruction of the weapons. Defendant subsequently filed a motion to modify the judgment and vacate the September 9, 1998, order. The motion was denied.

Defendant first argues that he was denied due process, because the trial court did not hold an evidentiary hearing prior to ordering the guns destroyed.

■ Minimum due process requires notice and a meaningful opportunity to be heard. *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 42 (1990), citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 47 L. Ed. 2d 18, 32, 96 S. Ct. 893, 902 (1976). It is not, however, a denial of due process when a party fails to avail himself of that opportunity. See *Campbell v. Cook County Sheriff's Board*, 215 Ill. App. 3d 868, 871 (1991).

■ Here, defendant chose as part of his guilty plea to stipulate to the evidence that would have been presented at trial. Defendant did not demand a hearing on return of his weapons. He instead stipulated at the guilty plea proceedings to the evidence, and he argued the law mandated return of the weapons. Defendant pursued this strategy for more than two years, during which the trial court heard several motions regarding destruction of the weapons. Prior to August 1997, defendant never requested an evidentiary hearing. Defendant has not been denied due process simply because he made the strategic choice to argue the legal merits based on stipulated facts. See *People v. Lehman*, 5 Ill. 2d 337, 343-44 (1955) (holding a defendant who is represented by counsel cannot complain when the court acts on a stipulation to testimony).

■ Defendant further argues that confiscation of the weapons deprived his wife of her interest in the weapons. Defendant's wife never appeared before the court. Further, nothing in the record suggests defendant's wife asserted a property right in the guns until defendant filed a motion to modify the judgment more than two years after his conviction. However, assuming defendant's wife has not waived her right to assert an interest in the weapons, the trial court did not deprive her of due process when it ordered the weapons destroyed.

The Supreme Court of the United States recently addressed this issue in the case of *Bennis v. Michigan*, 516 U.S. 442, 134 L. Ed. 2d 68, 116 S. Ct. 994 (1996). In *Bennis*, the State of Michigan forfeited as a public nuisance an automobile jointly owned by Tina and John Bennis. *Bennis*, 516 U.S. at 443, 134 L. Ed. 2d at 73, 116 S. Ct. at 996. John Bennis had been convicted of gross indecency after he committed a sex act with a prostitute in the automobile. *Bennis*, 516 U.S. at 443, 134 L. Ed. 2d at 73, 116 S. Ct. at 996. Tina argued she was denied due process because she was unaware of and uninvolved in the unlawful activity. *Bennis*, 516 U.S. at 446, 134 L. Ed. 2d at 74, 116 S. Ct. at 998. The Supreme Court held the "innocent-owner defense" did not protect Tina's interest in the car. *Bennis*, 516 U.S. at 446, 134 L. Ed. 2d at 74, 116 S. Ct. at 998. The Court relied on a line of cases beginning with *The Palmyra*, 25 U.S. (12 Wheat) 1, 6 L. Ed. 531 (1827), which hold that property put to illegal use can be confiscated without regard to the owner's culpability. *Bennis*, 516 U.S. at 446, 134 L. Ed. 2d at 75, 116 S. Ct. at 998, citing *Palmyra* 25 U.S. (12 Wheat) at 14, 6 L. Ed. at 535 (affirming forfeiture of privateering vessel because the acts of the crew bound owner whether innocent or guilty).

Here, defendant asserts only that his wife is being deprived of her property interest as a co-owner of the weapons. This is the same innocent-owner defense rejected in *Bennis*. *Bennis*, 516 U.S. at 451, 134 L. Ed. 2d at 77, 116 S. Ct. at 999. In accord with *Bennis*, we hold that the State is required to establish a defendant has used a weapon in a crime, but need not prove that any possible co-owner was guilty of a criminal act.

■ Defendant's second allegation of error addresses the question of whether the weapons were subject to confiscation. Section 24—6(a) of the Criminal Code of 1961 provides in pertinent part:

> "Upon conviction of an offense in which a weapon was used or possessed by the offender, any weapon seized shall be confiscated by the trial court." 720 ILCS 5/24—6(a) (West 1994).

The State must prove its right to the contraband by the civil preponderance-of-the-evidence standard. *People v. Braden*, 243 Ill. App. 3d 671, 676 (1993). However, forfeitures are not favored, and the

law must be narrowly construed to avoid injustice. *People v. Earl*, 121 Ill. App. 3d 254, 257 (1984).

■ The Supreme Court of Illinois has identified two categories of contraband. *People v. Steskal*, 55 Ill. 2d 157, 159 (1973). Contraband *per se* is material the mere possession of which constitutes a crime. *Steskal*, 55 Ill. 2d at 159. Derivative contraband is material that is not inherently illegal, but is used in an illegal manner. *Steskal*, 55 Ill. 2d at 159. Certain weapons, such as sawed-off shotguns and switchblades, are contraband *per se* because they cannot be legally possessed. *Braden*, 243 Ill. App. 3d at 681. A gun that may be legally possessed, however, is derivative contraband if it is closely connected to illegal activity. *Braden*, 243 Ill. App. 3d at 681.

This distinction was illustrated in *People v. Earl*, 121 Ill. App. 3d at 257. In *Earl*, the defendant was charged with illegal use of a weapon after being arrested while carrying a loaded handgun on the floor of the passenger compartment of his car. *Earl*, 121 Ill. App. 3d at 255. The police seized additional weapons from the trunk of the defendant's car. *Earl*, 121 Ill. App. 3d at 255. The court held that the handgun in the passenger compartment was derivative contraband because it was transported in an illegal manner. *Earl*, 121 Ill. App. 3d at 258. The court held that the illegal act was transportation of the single weapon in the passenger compartment. The court held that the weapons in the trunk were not closely connected to the crime and ordered them returned to the defendant. *Earl*, 121 Ill. App. 3d at 258.

Defendant argues that, as in *Earl*, the weapons seized from his home were not derivative contraband because they were not closely connected to the crimes for which he was convicted. Defendant claims the weapons seized were a collection of antiques and a valuable asset. Defendant contends that only the weapons that he sold to the undercover officer, which were the subject of the indictment, should be confiscated. We disagree.

■ Here, it is undisputed defendant was guilty of illegal arms sales. Defendant stipulated that Officer Ladoce would testify that he bought weapons from defendant at a location licensed for the sale of liquor and that at least one of the weapons had been stolen. Defendant argues that the cache of weapons at his home was a valuable collection of antique guns unconnected to the illegal sales at his place of business. We disagree. The State need only demonstrate by a preponderance of the evidence that the guns were connected to illegal activity. *Braden*, 243 Ill. App. 3d at 676. Defendant could not engage in the illegal sale of guns without acquiring and storing somewhere a supply of guns. *Cf. Braden*, 243 Ill. App. 3d at 682 (holding weapons seized in search for drugs could not be confiscated without evidence

that they were used in connection with drug sales). Defendant's illegal conduct required a supply of weapons. Therefore, the trial court could reasonably infer the weapons stored at defendant's home represented the inventory necessary to carry out the illegal sales.

Moreover, accepting defendant's arguments would defeat the purposes of section 24—6. 720 ILCS 5/24—6 (West 1994). Section 24—6 is intended to remove from our streets those weapons that have been turned to illegal purposes. See *People v. Ziomek*, 179 Ill. App. 3d 303, 309-10 (1989). If we accept defendant's argument, those who deal guns illegally could shield their inventory from confiscation through the simple expedient of storing the weapons away from the place of sale. Here, returning the weapons seized from the home would allow defendant to reap the rewards of his illegal activities. Although some rare or valuable weapons may be destroyed, this is solely a consequence of defendant's decision to engage in illegal gun dealing. In *Bennis*, the Supreme Court recognized the deterrent values of forfeiture, stating "[f]orfeiture of property prevents illegal uses 'both by preventing further illicit use of the [property] and by imposing an economic penalty thereby rendering illegal behavior unprofitable.' " *Bennis*, 516 U.S. at 452, 134 L. Ed. 2d at 78, 116 S. Ct. at 1000, quoting *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 687, 40 L. Ed. 2d 452, 470, 94 S. Ct. 2080, 2094 (1974).

In conclusion, we find that defendant was not denied due process because he was afforded ample opportunity to be heard on the forfeiture issue during the actual guilty plea and in the subsequent proceedings. Further, even if defendant's wife had timely and properly asserted a possessory interest in the weapons, confiscation did not unconstitutionally deprive her of that interest. Finally, the evidence as stipulated by defendant was sufficient for the trial court to infer a connection between the illegal sales and the weapons in defendant's home.

Therefore, the judgment of the circuit court of Cook County is affirmed. As part of this judgment, we grant the State's motion and assess defendant $100 as costs for this appeal.

Affirmed.

O'BRIEN, P.J., and GALLAGHER, J., concur.