# Illinois Official Reports

## Appellate Court

***People v. Black in Color Leather Vest With Attached Outlaws Motorcycle Club Patches***,
2016 IL App (2d) 150495

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BLACK IN COLOR LEATHER VEST WITH ATTACHED OUTLAWS MOTORCYCLE CLUB PATCHES, Defendant (AOA15 Civic Organization, Inc., Claimant-Appellant). |
| District & No. | Second District<br>Docket No. 2-15-0495 |
| Filed<br>Rehearing denied | February 23, 2016<br>March 15, 2016 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, Nos. 14-MR-574, 14-MR-578, 14-MR-579; the Hon. Sharon L. Prather, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joel Rabb, of Hesik-Prybylo, of Oak Park, for appellant.<br><br>Louis A. Bianchi, State's Attorney, of Woodstock (Jana Blake Dickson, Assistant State's Attorney, of counsel), for the People. |
| Panel | PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Justices Zenoff and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1      The claimant, AOA15 Civic Organization, Inc., better known as the Outlaws Motorcycle Club (the Outlaws), appeals from the April 17, 2015, judgment of the circuit court of McHenry County ordering that three black leather vests with attached Outlaws' patches be forfeited. For the reasons that follow, we affirm.

¶ 2                                 BACKGROUND

¶ 3      The forfeiture action arose out of an incident that occurred on November 30, 2012, at the Lizard Lounge in Wonder Lake. After six members of the Outlaws entered the lounge, two separate physical altercations ensued and several patrons became the victims of aggravated battery. Four members of the Outlaws–Robert Bellmore, Luciano Flores, Michael Blumer, and Kathleen McKevitt (the defendants)–were arrested and charged with aggravated battery and mob action. On February 8, 2013, the defendants' leather vests, bearing the patches of the Outlaws, were seized.

¶ 4      On August 19, 2014, Flores, McKevitt, and Bellmore entered negotiated plea agreements in which they agreed to plead guilty and to forfeit all Outlaws-related property that had been seized by the sheriff's department during the defendants' arrests.[1]

¶ 5      On September 12, 2014, the Outlaws filed a motion to intervene in the criminal proceedings, claiming a property interest in the patches attached to the defendants' black leather vests. The trial court denied the motion.

¶ 6      On October 17, 2014, the State filed a complaint for forfeiture pursuant to section 36-1 of the Criminal Code of 2012 (Code) (720 ILCS 5/36-1 (West 2014)) and section 40 of the Illinois Streetgang Terrorism Omnibus Prevention Act (Act) (740 ILCS 147/40 (West 2014)). The State asserted that the Outlaws were a commonly recognized gang and that the black leather vests, worn by the defendants during the commission of the crimes charged, were used directly or indirectly to facilitate street-gang activity. As such, the vests were subject to forfeiture.

¶ 7      Also on October 17, 2014, the trial court entered an order providing that the Outlaws were "deemed to be a party of interest in the Article 36 seizure matter."

¶ 8      On October 29, 2014, the Outlaws filed a motion to dismiss the forfeiture action, stating that it was untimely because the State did not initiate it within 60 days of the date of the seizure of the vests, in 2013.

¶ 9      On December 5, 2014, the trial court denied the Outlaws' motion to dismiss. The trial court explained that the property was not originally seized for purposes of forfeiture but instead pursuant to a search warrant, to be held until the criminal cases were disposed of. As such, the State's forfeiture action was timely.

¶ 10      On February 13, 2015, the trial court conducted a hearing on the State's complaint. James Duffy, an investigator with the Du Page County State's Attorney's office and an expert on motorcycle gangs, testified that the Outlaws gang members use the Outlaws' patches on their vests to portray "violent intimidation." He stated that the intimidation factor of the patches is

---

[1]The sheriff's department misplaced Blumer's vest. It was found after the forfeiture proceedings had already been initiated, and it was subsequently returned to him.

"cultivate[d] through violence" and that it is "systematically approved through their hierarchy." He testified that the Outlaws' patches signify membership in a one-percenter gang, meaning a group that willfully engages in criminal activity. He testified that the vests were used to facilitate street-gang activity.

¶ 11    Ashley Chovanec testified that she was at the Lizard Lounge when the defendants entered, wearing their vests with Outlaws' patches. She stated that "the bar got quiet" and "[p]eople got uncomfortable." She further stated that everyone else in the bar felt intimidated. Molly M'Gonigle, Robert Borta, and Cody Hutt testified similarly as to the effect the defendants' entrance had on the atmosphere of the bar.

¶ 12    Detective Kyle Mandernack, an expert on motorcycle gangs, testified that the Outlaws gain their reputation, influence, and membership through "violence and intimidation." He testified that the vests and patches facilitate street-gang-related activity by identifying Outlaws members to others. He further stated that the vests and patches facilitate street-gang-related activity by creating the impression of dominance and revenge, which warns others of the consequences of "messing with" Outlaws members.

¶ 13    On cross-examination, Mandernack acknowledged that the defendants' violent actions, regardless of whether they were wearing their vests, would have constituted street-gang-related activity. Further, the defendants simply wearing their vests, without any accompanying violent actions, would not have constituted street-gang-related activity.

¶ 14    On April 17, 2015, the trial court entered a written order granting the State's complaint. The trial court found that the evidence established that the Outlaws were a street gang within the meaning of the Act. The trial court further found that the Outlaws' vests are contraband in that they were used by the members of the Outlaws to facilitate street-gang activity. The trial court explained:

> "The Outlaws all acted jointly. The vests identify their membership and facilitated the fights resulting in injuries to the victims. They intimidated the patrons of the bar to show Outlaw dominance and to increase their reputation."

The Outlaws thereafter filed a timely notice of appeal.

¶ 15                                   ANALYSIS

¶ 16    The Outlaws' first contention on appeal is that the State did not timely file its complaint pursuant to section 40 of the Act (740 ILCS 147/40 (West 2014)) and it did not timely issue a notice of seizure pursuant to section 36-1 of the Code (720 ILCS 5/36-1 (West 2014)). The Outlaws insist that the criminal proceedings did not toll either the 60-day initiation requirement of section 40 of the Act or the 15-day notice requirement of section 36-1 of the Code.

¶ 17    Section 40 of the Act provides in relevant part:

> "(a) The following are declared to be contraband and no person shall have a property interest in them:
>
>> (1) any property that is directly or indirectly used or intended for use in      any manner to facilitate streetgang related activity; ***
>>     ***

(b) Within 60 days of the date of the seizure of contraband under this Section, the State's Attorney shall initiate forfeiture proceedings as provided in Article 36 of the Criminal Code of 2012." 740 ILCS 147/40 (West 2014).

¶ 18 In analyzing the above statute, our primary purpose is to determine and give effect to the legislature's intent, while presuming that the legislature did not intend to create absurd, inconvenient, or unjust results. *In re B.L.S.*, 202 Ill. 2d 510, 514-15 (2002). The best indication of the legislature's intent is the language of the statute. *In re Marriage of Lindman*, 356 Ill. App. 3d 462, 466 (2005). If the language of the statute is clear, there is no need to resort to other aids of statutory construction. *Id.* Further, courts are not at liberty to depart from the plain language and meaning of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 21. When resolving an issue of statutory construction, our review is *de novo*. *Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997).

¶ 19 We note that there are two categories of contraband. Contraband *per se* consists of those items whose possession alone constitutes a criminal offense, and such articles need not be returned even if improperly seized. *People v. Braden*, 243 Ill. App. 3d 671, 679 (1993). Derivative contraband consists of articles that are not inherently illegal but were used in an unlawful manner. *Id.* Derivative contraband must have a rational relationship or nexus to an unlawful purpose before it can be subject to forfeiture. *Id.*

¶ 20 Applying the above principles of statutory interpretation, we believe that the 60-day period set forth in section 40 of the Act begins to run after the defendant has been convicted of the offense that gave rise to the seizure of the alleged contraband. Section 40 specifically refers to the period beginning to run upon the "seizure of contraband." At issue in this case is whether the black leather vests and attached patches were derivative contraband. Something is not derivative contraband merely because the State alleges that it is. See *People v. Moore*, 410 Ill. 241, 252 (1951) (whether property is contraband and subject to confiscation depends on the nature of its use at the time of the seizure). Indeed, in the absence of a conviction of the offense that served as the basis for the confiscation of the alleged derivative contraband, the item at issue is not contraband. *People v. Mudd*, 54 Ill. App. 3d 603, 607 (1977). As such, it would not be appropriate for the State to initiate forfeiture proceedings until it has secured the conviction of the underlying offense.

¶ 21 We note that this determination is consistent with both Illinois precedent and United States Supreme Court precedent stating that pending criminal proceedings should precede forfeiture proceedings. In *Mudd*, the reviewing court warned of potential danger in allowing the forfeiture of property without a conviction: the State could conduct an improper search and seizure with the knowledge that, even though a criminal prosecution would be futile, the forfeiture proceedings would partially accomplish the same effect. *Id.* at 606. In *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 567 (1983), the Supreme Court gave additional reasons why forfeiture proceedings should not be initiated until after the underlying criminal proceedings have been concluded. The Supreme Court explained:

"Pending criminal proceedings present similar justifications for delay in instituting civil forfeiture proceedings. A prior or contemporaneous civil proceeding could substantially hamper the criminal proceeding, which–as here–may often include forfeiture as part of the sentence. A prior civil suit might serve to estop later criminal

- 4 -

proceedings and may provide improper opportunities for the claimant to discover the details of a contemplated or pending criminal prosecution. [Citations]. In some circumstances, a civil forfeiture proceeding would prejudice the claimant's ability to raise an inconsistent defense in a contemporaneous criminal proceeding." *Id.*

¶ 22     Based on the plain language of section 40, as well as the policy considerations annunciated in *$8,850* and *Mudd*, we believe that section 40's time frame to initiate forfeiture proceedings begins to run when the trial court enters a conviction in the underlying criminal proceedings. See *People v. Steskal*, 55 Ill. 2d 157, 160 (1973). Here, the defendants pled guilty and agreed to forfeit their jackets on August 19, 2014. As the State initiated forfeiture proceedings within 60 days of that date, its action was timely. See 740 ILCS 147/40(b) (West 2014). Further, as the Outlaws received notice of the forfeiture proceedings when they were "deemed to be a party of interest in the Article 36 seizure matter," the State complied with the notice requirements of section 36-1 of the Code.

¶ 23     In so ruling, we find the Outlaws' reliance on *People ex rel. Ward v. 1963 Cadillac Coupe*, 38 Ill. 2d 344, 348 (1967), to be misplaced. That case involved a vehicle and hence forfeiture proceedings were initiated pursuant to section 36-1 of the Code. Here, since the forfeiture pertained to street-gang-related derivative contraband, forfeiture proceedings were governed by section 40 of the Act. As explained above, the State timely initiated the forfeiture proceedings in the instant case.

¶ 24     The Outlaws' second contention on appeal is that as the patches on the vests belonged to the organization, not its individual members, they were not subject to forfeiture. In making this argument, the Outlaws rely on a California federal district court decision. In so doing, the Outlaws overlook Illinois law that provides that property that is put to an illegal use can be confiscated without regard to the owner's culpability. See *People v. DeLuca*, 302 Ill. App. 3d 454, 458 (1998). As our courts have already spoken on this issue, there is no need to consider the foreign authority cited by the Outlaws. See *Draper & Kramer, Inc. v. King*, 2014 IL App (1st) 132073, ¶ 31 (consideration of foreign decisions as persuasive is appropriate where Illinois authority on point is lacking or absent).

¶ 25     The Outlaws' final contention on appeal is that the trial court's determination that the leather vests were contraband is against the manifest weight of the evidence. A forfeiture proceeding is *in rem* and technically civil in form, but it may also be described as quasi-criminal where its objective is to punish unlawful activity. *Braden*, 243 Ill. App. 3d at 676. The issue in such a proceeding is whether the property is contraband. *Id.* The State must prove its right to the property by the civil standard of a preponderance of the evidence, and on review the trial court's decision will be overturned only if it is contrary to the manifest weight of the evidence. *People ex rel. Nerheim v. 2005 Black Chevrolet Corvette*, 2015 IL App (2d) 131267, ¶¶ 18-19. As explained above, the type of contraband at issue in the instant case is derivative contraband. *Braden*, 243 Ill. App. 3d at 679.

¶ 26     Here, two experts on motorcycle gangs testified that the Outlaws use their vests and patches both to intimidate others and to recruit members. Chovanec testified that the Outlaws did intimidate her. Mandernack's testimony demonstrated that the Outlaws wore their vests and would resort to violence to recruit members and to show others that they were not to be "messed with." In this regard, wearing the vests facilitated the defendants' goal, to be achieved by violent means if necessary, to show their dominance to others. Based on this testimony, the trial court could reasonably determine that the Outlaws' vests and patches

facilitated the defendants' violent actions at the Lizard Lounge. Accordingly, the trial court's determination that the vests and patches were derivative contraband subject to forfeiture is not against the manifest weight of the evidence.

¶ 27   In so ruling, we note that the Outlaws argue that Mandernack's testimony established that there was "no nexus whatsoever between the vests and the underlying assault." Specifically, the Outlaws argue that Mandernack's testimony demonstrated that (1) the vests represent mere affiliation with the Outlaws; (2) being a member of the Outlaws is not a crime; (3) merely wearing the vests, absent any violence, does not constitute gang-related activity; and (4) regardless of whether the defendants wore their vests, the violence was gang-related.

¶ 28   The Outlaws' argument conflates the concepts of causation and facilitation. Mandernack's testimony clearly demonstrated that the defendants wearing their vests did not cause the violence. However, as explained above, his testimony showed that wearing the vests *facilitated* the violence. As this is all the statute requires, the trial court did not err in granting the State's complaint for forfeiture.

¶ 29                                       CONCLUSION

¶ 30   For the reasons stated, the judgment of the circuit court of McHenry County is affirmed.

¶ 31   Affirmed.