NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220878-U

NO. 4-22-0878

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 28, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Peoria County |
| RAVANNAH L. GRIFFIS, | ) | No. 21CF296 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Lannerd concurred in the judgment.

**ORDER**

¶ 1 *Held*: (1) The trial court did not abuse its discretion in allowing Facebook messages into evidence, as the State presented sufficient authenticating evidence the messages were a conversation between defendant and another person. (2) The appellate court modified the sentencing order to allow an individual with a valid firearm owner's identification (FOID) card to retrieve one of two confiscated guns when trial counsel rendered ineffective assistance in conceding forfeiture of the second gun, which was not contraband.

¶ 2 In June 2021, the State charged defendant, Ravannah L. Griffis, with criminal trespass to residence (720 ILCS 5/19-4(a)(2) (West 2020)), criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2020)), and aggravated battery (720 ILCS 5/12-3.05 (West 2020)). The charges alleged defendant entered the residence of Tishana Currie without authority, hit Currie with a gun, and damaged a doorway and car window. During defendant's arrest, police seized two guns.

¶ 3        During the August 16, 2022, bench trial, the trial court allowed an exhibit consisting of a photo of Facebook messages over defendant's objection. The court found defendant guilty. As part of its sentencing order, and with the State's agreement, the court allowed the seized guns to be released to an individual with a valid firearm owner's identification (FOID) card. The State filed a motion to reconsider the order allowing release of the guns. Defendant's counsel conceded the issue, and the court granted the motion.

¶ 4        On appeal, defendant contends the State failed to properly authenticate the Facebook messages and trial counsel was ineffective for conceding forfeiture of the second gun seized by police. We affirm but modify the sentencing order to allow an individual with a valid FOID card to retrieve the second gun.

¶ 5                                    I. BACKGROUND

¶ 6        The State charged defendant in connection with a May 27, 2021, incident, alleging defendant forced her way into Currie's residence, causing damage to a door, struck Currie with a teal-colored gun, and shattered the windshield of Currie's car with a potted plant.

¶ 7        At trial, Currie testified her brother was the father of one of defendant's children. On May 27, 2021, she had given her brother a ride earlier in the day. Currie stated defendant and her brother were "having problems" and indicated Currie's sister also had a disagreement with defendant.

¶ 8        At about 11:30 p.m., Currie heard banging on her front door, and someone rang the doorbell. Currie could also hear defendant yelling but could not understand what she said. When Currie opened the door, defendant tried to force her way in, causing damage to the door. Currie tried to shut the door, but defendant grabbed her and tried to fight with her. Currie said she tried not to hit defendant because defendant was pregnant. Something hit Currie on the head,

and she saw a teal gun drop to the floor. Currie identified the State's exhibit No. 10 as a photo of the teal gun defendant dropped.

¶ 9 Curried yelled at defendant to "get out." Defendant's sister and brother arrived, and defendant left the house. Currie went outside and saw the windshield of her car was broken and a plant "was all over the *** porch and stuff." After defendant left, Currie called the police. Currie found a phone in the location where defendant tried to fight with her, and she gave it to the police.

¶ 10 Currie testified, after the incident, she engaged in a text message conversation with defendant, who wanted Currie to drop the charges in exchange for repairing Currie's windshield. Currie agreed because she needed her car for work and could not drive it with the windshield broken. However, defendant never paid for the window.

¶ 11 Currie identified the State's exhibit No. 11 as an image of an undated text message exchange between herself and defendant. In it, an individual Currie identified as defendant stated she needed her phone and inquired about the amount to fix the windshield. Currie replied the police had the phone and indicated her agreement to not press charges if defendant gave her money for the windshield. Currie also told defendant in the message she did not hit defendant because defendant was pregnant.

¶ 12 Currie also identified the State's exhibit No. 12 as screenshots of a message from a Facebook profile page, from "Vanna N Travon." Currie identified the Facebook profile as belonging to defendant and defendant's son. In the message, defendant apologized for saying hateful and hurtful things about Currie and for "coming to your house fighting you." Currie stated defendant sent her a message on Facebook with the apology.

¶ 13        Megan Rosenak, a Peoria police officer, responded to the call on May 27, 2021, about the disturbance at Currie's home. Currie told Rosenak defendant had dropped a phone. Rosenak took the phone and saw "there was messaging popping up," which she could read on the screen. Rosenak said she knew the messages were in reference to the fight that had occurred at Currie's home because she had just talked to Currie and there seemed to be some similarities. Rosenak could not open the phone to read the messages because the phone was locked, but she could see the messages on the locked screen. She took a photo of the screen, which was introduced as the State's exhibit No. 7.

¶ 14        The photo showed a Facebook message sent 22 minutes prior from "MaRiah Mason" stating, "It's not coo to fight sumbody pregnant Fareal no cool points y'all cAn argue all day." A message 20 minutes prior stated, "MaRiah Mason reacted [shocked emoji] to your message: Girl she just blew me I just went to her door and hit her ass." A notification 19 minutes prior from MaRiah Mason stated, "Vanna [laughing emoji] u kills I just don't want nobody putting they hands on u pregnant fareal that blows me."

¶ 15        Defense counsel objected, arguing, in part, it was not shown the phone belonged to defendant and it was unknown who was sending the messages or when they were sent. The State offered to provide additional foundation, and Rosenak testified again that her attention was drawn to the messages because of similarities between them and what Currie told her. She stated her familiarity with Facebook Messenger and emojis. Rosenak noted the reaction to a message sent 20 minutes prior, which stated, "Girl she just blew me I just went to her door and hit her ass," and explained that quote was the message to which the other person responded.

¶ 16        Defense counsel again objected and argued the messages were not from defendant and it was unknown who was sending them. The State responded there was sufficient evidence

the phone belonged to defendant and included a message sent from defendant that someone reacted to. The State argued defendant's concerns went to the weight of the evidence. The trial court admitted the exhibit.

¶ 17 After the trial court admitted the exhibit, Rosenak testified defendant's sister later called and asked to retrieve defendant's phone. Defendant's mother also returned to the scene and asked for the phone. Rosenak did not release the phone to them.

¶ 18 Nehemiah Doyle, another Peoria police officer, went to defendant's home on May 31, 2021, as part of the investigation of the incident. Doyle recovered a bag with two guns in it, one of which was the teal-colored gun identified in the State's exhibit No. 10. The gun had no blood or hair on it, and no testing was performed on it. Neither gun was admitted into evidence, and the State never alleged the second gun was involved in the incident.

¶ 19 During initial closing arguments, neither party addressed the messages in exhibit No. 7. However, the State briefly mentioned the messages in rebuttal to address a defense argument about how the phone ended up on the floor of Currie's home. The trial court found defendant guilty on all charges. The court did not specifically reference exhibit No. 7, but the court did tell defendant she made a poor decision and told defendant, "[y]ou don't have to respond or react to every syllable that is put on Facebook and social media."

¶ 20 Defendant filed a motion for a judgment of acquittal notwithstanding the trial court's findings or a motion for a new trial, alleging in part the court erred in denying objections made during trial. The court denied the motion.

¶ 21 On September 29, 2022, the trial court sentenced defendant to 24 months' probation. Defense counsel asked the court to release the seized guns to the father of defendant's child, who had a valid FOID card. Counsel noted defendant had a valid FOID card at the time of

the seizure and stated money from the sale of the guns could be helpful to defendant. The court noted the firearms were not physically put into evidence and the State replied, "I honestly don't know how that works. I suppose we don't need to hold onto them, they could be released but they can't be released to [defendant]. They should be released to somebody *** with a valid FOID [card]." Defense counsel further noted there were two guns, the teal gun involved in the incident and "another one [defendant] just handed over to them that they took that had nothing to do with this." The State responded, "Yeah, that's fine," and defense counsel asked that the matter be included in the order. In the sentencing order, the court wrote, "the guns may be released to an individual with a valid FOID card."

¶ 22        On October 3, 2022, defendant filed a notice of appeal. Also on October 3, 2022, the State filed a motion to reconsider the release of the guns. The State noted defendant previously requested the firearms be released to a friend with a valid FOID card. The State then wrote, "720 ILCS 5/24-6(a), however, requires that '[u]pon conviction of an offense in which a weapon was used or possessed by the offender, any weapon seized shall be confiscated by the trial court.' " On October 6, 2022, the trial court held a hearing, and defense counsel conceded the issues, stating:

> "I have actually reviewed the motion. I looked up and reviewed the statute.
> Initially I was going to stand on the argument that the other weapon seized wasn't
> part of this so it shouldn't be confiscated and destroyed, but after looking at the
> statute I believe it states any weapons seized, not just ones that were party to this
> incident. So, I will have to concede. I don't have any lawful argument."

The court granted the motion and edited the original sentencing order by crossing out the language allowing the guns to be released and writing "revoked per order on 10/6/22." The court

added a file stamp of October 6, 2022, to the bottom of the order. This court allowed

defendant's motion to file a late notice of appeal from the October 6, 2022, order.

¶ 23                                   II. ANALYSIS

¶ 24                     A. Authentication of Facebook Messages

¶ 25            On appeal, defendant first contends the trial court abused its discretion in

allowing exhibit No. 7 into evidence. Defendant argues the State failed to provide a sufficient

foundation to properly authenticate the Facebook messages shown in the photo of the phone

recovered from Currie's home. The State argues defendant's concerns about the messages went

to the weight of the evidence instead of the admissibility of the exhibit.

¶ 26            We treat electronic messages obtained from a phone like any other form of

documentary evidence. See *People v. Watts*, 2022 IL App (4th) 210590, ¶ 74 (citing *People v.*

*Price*, 2021 IL App (4th) 190043, ¶ 115, 193 N.E.3d 320; *People v. Ziemba*, 2018 IL App (2d)

170048, ¶ 51, 100 N.E.3d 635). A proper foundation is laid for the admission of such evidence

when the document has been identified and authenticated. *Watts*, 2022 IL App (4th) 210590,

¶ 75. "Authentication of documentary evidence requires the proponent to present evidence the

document is what the proponent claims it to be." *Watts*, 2022 IL App (4th) 210590, ¶ 75. "To

do so, '[t]he proponent need prove only a rational basis upon which the fact finder can conclude

that the document did in fact belong to or was authored by the party alleged.' " *Watts*, 2022 IL

App (4th) 210590, ¶ 75 (quoting *Ziemba*, 2018 IL App (2d) 170048, ¶ 51). "The trial court's

finding of authentication is merely a finding there is sufficient evidence to justify presentation of

the offered evidence to the trier of fact and does not preclude the opponent from contesting the

genuineness of the writing after the authentication requirements are satisfied." *Watts*, 2022 IL

App (4th) 210590, ¶ 75. " 'If the court, after serving its screening function, allows the evidence

to be admitted, the issue of the document's authorship is ultimately for the jury to determine.' " *Watts*, 2022 IL App (4th) 210590, ¶ 75 (quoting *Ziemba*, 2018 IL App (2d) 170048, ¶ 51).

¶ 27 "Documentary evidence may be authenticated by either direct or circumstantial evidence." *Watts*, 2022 IL App (4th) 210590, ¶ 76. Circumstantial evidence of authenticity includes factors such as appearance, contents, substance, and distinctive characteristics, which are to be considered with the surrounding circumstances. *Watts*, 2022 IL App (4th) 210590, ¶ 76. Thus, documentary evidence may be authenticated by its contents if it is shown to contain information that would be known only by the alleged author of the document or, at the very least, by a small group of people including the alleged author. *Watts*, 2022 IL App (4th) 210590, ¶ 76. We review a trial court's decision to admit documentary evidence for an abuse of discretion. *Watts*, 2022 IL App (4th) 210590, ¶ 76

¶ 28 When determining if a party has made a *prima facie* showing of authentication of documentary evidence, the following nonexhaustive list of factors are appropriate for a trial court to consider:

> " '(1) the purported sender admits authorship, (2) the purported sender is seen composing the communication, (3) business records of an Internet service provider or cell phone company show that the communication originated from the purported sender's personal computer or cell phone under circumstances in which it is reasonable to believe that only the purported sender would have had access to the computer or cell phone, (4) the communication contains information that only the purported sender could be expected to know, (5) the purported sender responds to an exchange in such a way as to indicate circumstantially that he was in fact the author of the communication, or (6) other circumstances peculiar to the

- 8 -

particular case may suffice to establish a *prima facie* showing of authenticity.' "

*Price*, 2021 IL App (4th) 190043, ¶ 118 (quoting *People v. Kent*, 2017 IL App

(2d) 140917, ¶ 118, 81 N.E.3d 578).

See *People v. Brand*, 2021 IL 125945, ¶ 44, 190 N.E.3d 149.

¶ 29        "[T]he bar for authentication of evidence is not particularly high."  (Internal

quotation marks omitted.)  *Watts*, 2022 IL App (4th) 210590, ¶ 82 (quoting *United States v.*

*Vayner*, 769 F.3d 125, 130 (2d Cir. 2014)).  The proponent need not rule out all possibilities

inconsistent with authenticity and needs only to adduce sufficient proof so a reasonable juror

could find in favor of authenticity.  *Watts*, 2022 IL App (4th) 210590, ¶ 82.  Once an item of

evidence is "authenticated" this merely renders the evidence admissible, leaving the issue of its

ultimate reliability to the jury.  *Watts*, 2022 IL App (4th) 210590, ¶ 82.  The opposing party then

remains free to challenge the reliability of the evidence, minimize its importance, or argue

alternative interpretations of its meaning.  *Watts*, 2022 IL App (4th) 210590, ¶ 82.  Those

challenges go to the weight of the evidence rather than its initial admissibility.  *Watts*, 2022 IL

App (4th) 210590, ¶ 82.

¶ 30        This court recently addressed the authentication of electronic materials issue in

*Watts*.  There, incriminating memes were found on the defendant's phone after his arrest.  While

the source of the memes was unknown, this court found the material was sufficiently

authenticated when the State was able to establish the phone belonged to the defendant.  *Watts*,

2022 IL App (4th) 210590, ¶ 78.  An officer provided evidence the memes were created and

modified on the defendant's phone in close proximity to a text exchange between the defendant

and his girlfriend, thus providing circumstantial evidence the memes belonged to the defendant.

*Watts*, 2022 IL App (4th) 210590, ¶ 78.  Therefore, the trial court did not abuse its discretion in

allowing evidence of the memes, as there was direct and circumstantial evidence the memes were what the State claimed them to be—memes from the defendant's phone. *Watts*, 2022 IL App (4th) 210590, ¶ 78.

¶ 31 Here, the content of the Facebook messages in exhibit No. 7 were properly authenticated by circumstantial evidence showing defendant was engaged in a conversation about the incident at Currie's home and was the author of an admission to another person, stating, "[g]irl she just blew me I just went to her door and hit her ass." There was no meaningful dispute the phone belonged to defendant. The phone was found immediately after the incident at Currie's home in the location of the incident. Defendant also later sought to retrieve her missing phone. The messages appeared on defendant's phone in close temporal proximity to the events at issue, and Rosenak testified they contained information similar to facts Currie told her about the incident. The messages from MaRiah Mason were in response to "Vanna," a logical nickname for defendant, whose first name was Ravannah and who had a Facebook profile with the name "Vanna N Tavon." Further, the messages contained information specific to defendant, such as her pregnancy. Rosenak explained how a Facebook reaction functioned to show that defendant sent the message with the admission. Thus, the State presented evidence providing a rational basis upon which the trial court could conclude the evidence was what the proponent claimed it to be—Facebook messages between defendant and another person about the incident at Currie's home. At that point, the court did not abuse its discretion in allowing the evidence, and issues concerning the reliability of the messages went to the weight of the evidence instead of its admissibility.

¶ 32    Defendant relies substantially on two cases to argue otherwise, *Kent*, 2017 IL App (2d) 140917, and *People v. Watkins*, 2015 IL App (3d) 120882, 25 N.E.3d 1189. However, those cases are distinguishable.

¶ 33    In *Kent*, the defendant was convicted of the first degree murder of a victim who had been shot in his own driveway. *Kent*, 2017 IL App (2d) 140917, ¶¶ 3-4. On appeal, the defendant argued the trial court abused its discretion in admitting into evidence a Facebook profile under a nickname associated with the defendant entitled "Lorenzo Luckii Santos" that contained a photograph of a person resembling him. *Kent*, 2017 IL App (2d) 140917, ¶ 57. The profile contained a post reading " 'its my way or the highway…..leave em dead n his driveway.' " *Kent*, 2017 IL App (2d) 140917, ¶ 57. The State introduced no direct or circumstantial proof of authentication, defendant did not admit creating the Facebook profile or authoring the post, and there was no testimony suggesting defendant was affiliated with the creation of either. *Kent*, 2017 IL App (2d) 140917, ¶ 119. Considering the ease of fabricating a social media account, the *Kent* court found the Facebook post was improperly admitted, because the only evidence of authentication was the defendant's nickname and a photograph allegedly resembling the defendant. *Kent*, 2017 IL App (2d) 140917, ¶ 119. In contrast, here, the State did present circumstantial evidence of authentication, and the evidence strongly suggested defendant was affiliated with the messages on her phone. Thus, we distinguish *Kent* on that basis. See *People v. Curry*, 2020 IL App (2d) 180148, ¶¶ 54-55, 179 N.E.3d 824 (distinguishing *Kent*).

¶ 34    In *Watkins*, the appellate court determined the State failed to lay a proper foundation for the admission of photographs depicting text messages in a case where the defendant was charged with unlawful possession of a controlled substance with intent to deliver. After executing a search warrant inside of a home were the defendant and five other people were

present, the officers found drugs and multiple cellular phones in an open kitchen drawer. *Watkins*, 2015 IL App (3d) 120882, ¶¶ 11-12. One of those phones contained drug-related text messages that were directed to someone named "Charles," which happened to be the defendant's first name. *Watkins*, 2015 IL App (3d) 120882, ¶¶ 16-17. Notably, however, there was no evidence of the phone number associated with the phone, and there was no indication from the phone itself that the defendant was the owner. *Watkins*, 2015 IL App (3d) 120882, ¶ 24. Under those circumstances, the appellate court determined the evidence was insufficient to authenticate the text messages as having been sent to the defendant. *Watkins*, 2015 IL App (3d) 120882, ¶ 38. In so holding, the court emphasized the police officer who identified the photographs of the text messages at trial "had no personal knowledge of the text messages and had no idea who was the owner or user of the cell phone." *Watkins*, 2015 IL App (3d) 120882, ¶ 38.

¶ 35 Here, unlike *Watkins*, and as previously discussed, there is no meaningful dispute the phone belonged to defendant. Further, Rosenak personally witnessed the message notifications on the phone in close temporal proximity to the incident and recognized similarities between the messages and information provided by Currie. Thus, *Watkins* is distinguishable. See *People v. Harper*, 2017 IL App (4th) 150045, ¶ 61, 80 N.E.3d 856 ("The present case is distinguishable from *Watkins* because the State here had evidence the cell phone in question belonged to defendant."). Accordingly, we determine the trial court did not abuse its discretion in allowing exhibit No. 7 into evidence.

¶ 36                                  B. Forfeiture of the Guns

¶ 37 Defendant next contends the trial court erred in granting the State's motion to reconsider the release of one of the guns. We note the State initially forfeited the issue of the release of the guns when it agreed at sentencing to the return of them to a qualified individual.

- 12 -

The State then raised a legal issue concerning confiscation of the guns for the first time in its motion to reconsider. Normally, an argument raised for the first time in a motion to reconsider in the trial court is forfeited on appeal. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36, 5 N.E. 3d 158. However, forfeiture can be forfeited. See *People v. De La Paz*, 204 Ill. 2d 426, 433, 791 N.E.2d 489, 493 (2003). Here, defendant conceded the issue at the hearing on the motion to reconsider. Defendant recognizes her trial counsel forfeited the issue by conceding the issue at the hearing on the State's motion to reconsider, but she argues counsel was ineffective for doing so.

¶ 38          A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11, 989 N.E.2d 192. To prevail on such a claim, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 687). To satisfy the second prong of *Strickland*, "[a] defendant establishes prejudice by showing that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 4, 890 N.E.2d 424, 426 (2008). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 39    Under section 24-6 of the Illinois Criminal Code of 2012 (720 ILCS 5/24-6 (West 2020)), the State is given the authority to confiscate and dispose of weapons. Section 24-6 provides, in part:

"(a) Upon conviction of an offense in which a weapon was used or possessed by the offender, any weapon seized shall be confiscated by the trial court.

(b) Any stolen weapon so confiscated, when no longer needed for evidentiary purposes, shall be returned to the person entitled to possession, if known. After the disposition of a criminal case or in any criminal case where a final judgment in the case was not entered due to the death of the defendant, and when a confiscated weapon is no longer needed for evidentiary purposes, and when in due course no legitimate claim has been made for the weapon, the court may transfer the weapon to the sheriff of the county who may proceed to destroy it, or may in its discretion order the weapon preserved as property of the governmental body whose police agency seized the weapon, or may in its discretion order the weapon to be transferred to the Illinois State Police for use by the crime laboratory system, for training purposes, or for any other application as deemed appropriate by the Department. If, after the disposition of a criminal case, a need still exists for the use of the confiscated weapon for evidentiary purposes, the court may transfer the weapon to the custody of the State Department of Corrections for preservation." 720 ILCS 5/24-6 (West 2020).

¶ 40    Although partly civil, a forfeiture action is considered quasi-criminal because the "only objective is to penalize unlawful activity." *People v. Earl*, 121 Ill. App. 3d 254, 257, 459

- 14 -

N.E.2d 342, 345 (1984). As a forfeiture proceeding is quasi-criminal, the burden of proof is on the State. *People v. Braden*, 243 Ill. App. 3d 671, 676, 611 N.E.2d 575, 579 (1993) (citing *People v. LeShoure*, 143 Ill. App. 3d 839, 844, 493 N.E.2d 687, 690 (1986)). The State is required to prove its right to seized contraband by a preponderance of the evidence. *Braden*, 243 Ill. App. 3d at 676, 611 N.E.2d at 579. On appeal of a contraband-forfeiture case, we review whether the trial court's order is contrary to the manifest weight of the evidence. *Braden*, 243 Ill. App. 3d at 676, 611 N.E.2d at 579.

¶ 41    Initially, defendant contends the parties and the trial court misinterpreted the term "any" in section 24-6 to apply to both guns. Defendant argues under *Earl*, the term applies only to contraband, and the second gun found in the bag with the teal gun could not be subject to forfeiture because it was not *per se* or derivative contraband.

¶ 42    Our supreme court has identified two categories of contraband. *People v. Steskal*, 55 Ill. 2d 157, 159, 302 N.E.2d 321, 323 (1973). "Contraband *per se* is material the mere possession of which constitutes a crime." *People v. DeLuca*, 302 Ill. App. 3d 454, 459, 706 N.E.2d 927, 930 (1998) (citing *Steskal*, 55 Ill. 2d at 159, 302 N.E.2d at 323). "Derivative contraband is material that is not inherently illegal, but is used in an illegal manner." *DeLuca*, 302 Ill. App. 3d at 459, 706 N.E.2d at 930 (citing *Steskal*, 55 Ill. 2d at 159, 302 N.E.2d at 323). "Certain weapons such as sawed[-]off shotguns and switchblades, are contraband *per se* because they cannot be legally possessed." *DeLuca*, 302 Ill. App. 3d at 459, 706 N.E.2d at 930. "A gun that may be legally possessed, however, is derivative contraband if it is closely connected to illegal activity." *DeLuca*, 302 Ill. App. 3d at 459, 706 N.E.2d at 930.

¶ 43    This distinction was illustrated in *Earl*, which also held only *per se* or derivative contraband could be forfeited under section 24-6. *Earl*, 121 Ill. App. 3d at 258, 459 N.E.2d at

345. There, the defendant was charged with illegal use of a weapon after being arrested while carrying a loaded handgun on the floor of the passenger compartment of his car. *Earl*, 121 Ill. App. 3d at 255, 459 N.E.2d at 343. The police also seized additional weapons from the trunk of the defendant's car. *Earl*, 121 Ill. App. 3d at 255, 459 N.E.2d at 343. The appellate court held the handgun in the passenger compartment was derivative contraband because, while it was not unlawful to possess such a weapon in Illinois, the State established the weapon was used or possessed in connection with illegal activity when it was transported in an illegal manner. *Earl*, 121 Ill. App. 3d at 255, 459 N.E.2d at 345. However, the weapons confiscated from the trunk of his vehicle were neither contraband *per se* nor derivative contraband. *Earl*, 121 Ill. App. 3d at 255, 459 N.E.2d at 345. The weapons in the trunk were not linked to the illegal activity, as the charge was not connected to the trunk of the vehicle. *Earl*, 121 Ill. App. 3d at 255, 459 N.E.2d at 345.

¶ 44 The *Earl* court rejected an argument by the State that "any weapon seized" in section 24-6 allowed forfeiture of "every weapon seized, regardless of whether the weapons were in any respect related to the commission of an offense." *Earl*, 121 Ill. App. 3d at 256, 459 N.E.2d at 344. The court noted forfeitures of property are not favored in the law, and statutes authorizing forfeitures must be strictly construed. *Earl*, 121 Ill. App. 3d at 257, 459 N.E.2d at 345. Finding the trial court could confiscate a weapon under section 24-6(b) only when "no legitimate claim" had been made, the court held the legislature intended to approve confiscation of contraband *per se*, or derivative contraband, as no legitimate claim could be made for such weapons. See *Earl*, 121 Ill. App. 3d at 258, 459 N.E.2d at 345. In contrast, the court held "weapons which are neither contraband *per se* nor derivative contraband are returnable to persons establishing their possessory rights to them." *Earl*, 121 Ill. App. 3d at 258, 459 N.E.2d

at 345. Thus, the *Earl* court ordered the weapons found in the trunk returned to the defendant. *Earl*, 121 Ill. App. 3d. at 259, 459 N.E.2d 346.

¶ 45   Here, the teal gun was derivative contraband because, while it was not illegal for defendant to have it, it was used in the aggravated battery offense. However, the State never established the other gun found in the bag with the teal gun was either *per se* or derivative contraband. Nothing in the record suggests defendant illegally possessed the other gun or that it was used in the commission of the crimes she was convicted of. Thus, the State never met its burden of showing its authority to forfeit the second gun. Because the State never met its burden, and the parties appeared to be acting solely under a misapprehension of the meaning of section 24-6, defense counsel unreasonably conceded the issue. In doing so, counsel rendered ineffective assistance, and the law would have required the result of the proceeding to be different had the trial court been presented with the correct law.

¶ 46   Notably, the State does not take issue with the holding of *Earl* or disagree the second gun is not subject to forfeiture if it is not *per se* or derivative contraband. Instead, the State suggests the factual issue of whether the second gun was contraband is best left to a postconviction collateral attack. We disagree.

¶ 47   "[I]neffective assistance of counsel claims may sometimes be better suited to collateral proceedings but only when the record is incomplete or inadequate for resolving the claim." *People v. Veach*, 2017 IL 120649, ¶ 46, 89 N.E.3d 366. Here, the record is sufficient to determine defendant's claim. The State speculates for the first time on appeal the second gun could have been in defendant's possession at the time of the offenses. However, the State had the initial burden of proof. In that respect, the State never suggested the second gun was illegally possessed or involved in the crimes. The forfeiture proceeding was a continuation of the

prosecution, and the evidence before the court at trial was also before the court in the forfeiture proceedings. See *LeShoure*, 143 Ill. App. 3d at 841, 493 N.E.2d at 688. As previously discussed, nothing suggests the second gun was either *per se* or derivative contraband. There is no evidence or logical inference from the record that another gun aside from the teal gun was used by defendant in committing the offenses.

¶ 48　　　　Instead, at sentencing, when defense counsel noted there were two guns, the teal gun involved in the incident and "another one [defendant] just handed over to them that they took that had nothing to do with this," the State responded, "Yeah, that's fine." In its motion to reconsider, the State did not take issue with any of the facts surrounding the second gun. Instead, it merely presented a legal argument—contending section 24-6 required that "any" gun seized be confiscated. Thus, the State also forfeited any argument it had with the underlying facts, as it never challenged those in its motion to reconsider.

¶ 49　　　　Under these circumstances, where the State forfeited the factual speculation it now attempts to raise for the first time on appeal, and where there is no support in the record for such speculation, requiring defendant to initiate a postconviction petition would be burdensome and unnecessary. See generally, *People v. Mudd*, 54 Ill. App. 3d 603, 605, 370 N.E.2d 37, 39 (1977) (citing *People v. Jackson*, 26 Ill. App. 3d 845, 849, 326 N.E.2d 138, 141 (1975)). Thus, we conclude counsel rendered ineffective assistance by agreeing to the forfeiture of both guns at the hearing on the State's motion to reconsider.

¶ 50　　　　Accordingly, we affirm the trial court's judgment except as to forfeiture of the second gun. Pursuant to our power under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we modify the court's judgment to provide that a designee of defendant with a valid FOID card, who is not prohibited from possessing a firearm, be allowed to retrieve defendant's

second seized gun.  If the gun has been sold, any proceeds of the sale shall be turned over to defendant.  See *LeShoure*, 143 Ill. App. 3d at 848, 493 N.E.2d at 692.

¶ 51                                    III. CONCLUSION

¶ 52          For the reasons stated, we affirm the trial court's admission of exhibit No. 7 into evidence but modify the sentencing order as it relates to the second gun.

¶ 53          Affirmed as modified.